**Carl AIKEN et al., Plaintiffs,**

**Richard Miller, Tom Gilley, Helen Gilley, Plaintiffs in Intervention,**

v.

**Mario OBLEDO et al., Defendants.**

**Mario OBLEDO, Secretary, Health and Welfare Agency of the State of California, and Marion J. Woods, Director, Department of Benefit Payments in the State of California, Cross-Complainants,**

v.

**Earl L. BUTZ, Secretary, United States Department of Agriculture, Cross-Defendant.**

**Civ. No. S–75–76 TJM.**

United States District Court, E. D. California.

Oct. 18, 1977.

As Amended Nov. 2, 1977.

Robert M. Teets, Jr., Frances A. Zwenig, Richard H. Hart, Jr., Food Law Center, California Rural Legal Assistance, San Francisco, Cal., John F. O'Toole, Michael B.

Weisz, California Rural Legal Assistance, Marysville, Cal., Jerry Wilhelm, California Rural Legal Assistance, Healdsburg, Cal., Ralph Santiago Abascal, California Rural Legal Assistance, Sacramento, Cal., for plaintiffs and plaintiffs in intervention.

Dwayne Keyes, U.S. Atty., Richard W. Nichols, Chief Asst. U.S. Atty., Sacramento, Cal., for Federal defendants.

## MEMORANDUM

MacBRIDE, Chief Judge.

This action was initiated by plaintiffs to redress alleged improper and unlawful administration of the Food Stamp Program by federal and state officials.

The cast of characters is considerable. Plaintiffs, as set forth in their First Amended Complaint of March 3, 1975, are Carl Aiken, Barry Johnston, Los Angeles Health Care Rights Organization (hereinafter "LAHCRO"), an unincorporated association, and San Francisco Neighborhood Legal Assistance Foundation, Inc. (hereinafter "SFNLAF"), a not-for-profit California corporation.[1] The defendants named in this complaint are Earl Butz, as Secretary, United States Department of Agriculture, Mario Obledo, as Secretary, Health and Welfare Agency, State of California, and Jerold Prod, as Acting Director, Department of Benefit Payments, State of California.[2] On December 29, 1975, the court granted the motion of Richard Miller and Tom and Helen Gilley for leave to file their Complaint in Intervention. In said complaint the movants are named as plaintiffs in intervention (hereinafter "Intervenors" to distinguish them from "Plaintiffs" ), and the named defendants are Earl Butz, as Secretary, United States Department of Agriculture, Mario Obledo, as Secretary, Health and Welfare Agency, State of California, and Marion Woods, as Director, Department of Benefit Payments, State of

California. On July 12, 1976, the court granted Plaintiffs' and Intervenors' joint motion to file a Supplemental Complaint, pursuant to FRCP 15(d), which names the same parties defendant but sets forth facts alleged to have taken place subsequent to the filing of the First Amended Complaint and the Complaint in Intervention.

Plaintiffs and Intervenors have moved this court to certify a nationwide class of food stamp applicants. Additionally, they have moved this court for partial summary judgment against the defendants on the claims which are the subject of the class certification motion. Butz has responded by opposing the motions for class certification and for partial summary judgment. The state defendants have responded by opposing the Plaintiffs' and Intervenors' motion for partial summary judgment, by filing a cross-claim against defendant Butz, and by moving for summary judgment on their cross-claim. The court will first take up the Plaintiffs' and Intervenors' motion for partial summary judgment, then the state defendants' motion for summary judgment on their cross-claim, and finally will consider the Plaintiffs' and Intervenors' motion for class certification.

### I. Plaintiffs' and Intervenors' Motion for Partial Summary Judgment

### A. Summary Judgment Motion Against the Federal Defendant

### (1) Background

The Food Stamp Program was created by the Food Stamp Act of 1964, 7 U.S.C. § 2011 et seq. The purpose of this legislation was to maintain adequate levels of nutrition and to strengthen the nation's agricultural economy. 7 U.S.C. § 2011; *Moreno v. U. S. Dept. of Agriculture*, 345 F.Supp. 310 (D.D.C.1972). The Program is jointly administered by the federal and state governments. The Secretary of the

---

1. One Rita Davison was also originally named as a plaintiff in the First Amended Complaint, but she was dismissed by stipulation of the parties on January 27, 1976, without prejudice, after counsel for plaintiffs lost contact with her.

2. Memoranda subsequent to the filing of the First Amended Complaint have noted Marion J. Woods in the caption as the Director of the Department of Benefit Payments.

Department of Agriculture is charged with the responsibility of administering the federal aspects of the Program, 7 U.S.C. § 2013(a), and is authorized to issue regulations, not inconsistent with the Act, as he deems necessary or appropriate for the effective and efficient administration of the Program. 7 U.S.C. § 2013(c). The United States Department of Agriculture (hereinafter "USDA") Food and Nutrition Service (hereinafter "FNS") has been delegated the responsibility, by the Secretary, of administering the Program. 7 CFR §§ 270.2(y), 270.3(a). To perform this function, the FNS promulgates rules which are referred to as USDA FNS Food Stamp (hereinafter "FS") Instructions.

A household must be "certified" to receive food stamps. Under the "normal" procedure of certification, a household applies for food stamps and is certified to receive stamps if it satisfies the eligibility requirements. The standards for eligibility are uniform throughout the nation. 7 U.S.C. § 2014(b). Food stamps or coupons received by a household after certification have a "face value" which is equal to the dollar value of food which may be received by the household when it uses the stamps to purchase food at a retail store. The face value of stamps received by a household is equal to the value of a "nutritionally adequate diet," as determined by the Secretary. 7 U.S.C. § 2016(a). A certified household must generally purchase its allotment of stamps, paying an amount deemed by the Secretary to be a "reasonable investment on the part of the household, but in no event more than 30 per centum of the household's income," 7 U.S.C. § 2016(b), except that households with an income below a specified amount may be issued stamps without charge—those households which do not pay for their stamps are said to be at the "zero purchase level." 7 U.S.C. § 2016(b). The difference between the face value of the coupons received by a household and the amount which the household must pay for the coupons is referred to as the "bonus value." Certification of a household is normally accomplished after at least the income of the applicant household

is verified in some manner, and other eligibility factors may also be verified prior to certification. 7 CFR § 271.4(a)(2)(iii). The period of time for which a household is certified is to be determined by the state agency administering the Program locally, 7 CFR § 271.4(a)(4), through its eligibility worker (EW), with the maximum certification period being twelve months. 7 CFR § 271.4(a)(4)(iii)(c), (d). Verification of income and eligibility factors is a process which is described by FNS(FS) Instruction 732–1, § 2123.1 (See Plaintiffs' and Intervenors' Exhibit H to February 11, 1976 Memorandum):

> "Verification means that information has been secured which will establish the accuracy, or lack thereof, of information provided by the applicant. Gross nonexempt income and mandatory deductions are the minimum verification required at the initial certification and at subsequent certifications when the amount of this income has changed by more than $25 or the source has changed. This does not preclude verification of other items necessary to determine eligibility particularly when information provided by the applicant is unclear, incomplete, or inconsistent. The State agency should provide EWs with guidelines to determine when additional verification is required.

> Sources of verification include documentary evidence, collateral contacts, or home visits. Applicants are primarily responsible for furnishing documents sufficient for verification, or at least information from which the verification must necessarily result in a denial of benefits since no basis is provided from which eligibility for program participation or basis of coupon issuance may be determined.

> While the applicant household does have primary responsibility for providing verification, the EW is expected to aid the applicant. Collateral contacts by means of telephone calls, letters, or personal visits may suffice in some instances. In other cases, the applicant should be informed that certain documents will be

necessary and provided a reasonable opportunity to comply with such requests. In cases of extreme emergency, especially when the employer refuses to provide documentation or information concerning income, the household should not be denied solely on that basis, but the EW shall, in consultation with the applicant or other sources, arrive at a figure to be used for certification purposes."

The Secretary, on July 27, 1971, caused to be published in the *Federal Register*, the following regulation concerning verification of eligibility for food stamps (7 CFR § 271.4(a)(2)(iii)):

"(a) *Household certification* —

\* \* \* \* \* \*

(2) *Certification of other households.* The State agency shall provide for the certification of other households by:

\* \* \* \* \* \*

(iii) Verification of income upon initial certification and, if the amount of household income has changed substantially or if the source of the income has changed, upon recertification. Verification is required for other factors of eligibility only to the extent that the information furnished by the applicant is unclear, incomplete, or inconsistent or otherwise raises doubt concerning any factor affecting eligibility or the basis of coupon issuance. In any case where a household indicates that it has income so low that there is a likelihood that a change must occur in order for the household to continue to subsist as an economic unit, verification of eligibility is required unless expenditures and income are so stable as to indicate that the household could maintain this level of existence for an extended period of time. At least one collateral contact is mandatory in cases of this type. Certification may be made for 30 days without verification of eligibility factors with respect only to households which report an income so low that they have no purchase requirement and which appears, on the basis of other information furnished, to be eligible for participation."

All but the last sentence of the foregoing provision pertains to the normal verification process. The last sentence of this provision authorizes participating states to certify households with "zero purchase levels" without verification for a period of up to thirty (30) days. This may be referred to as "certification pending verification." The government issued FNS(FS) Instruction 732–1, § 2313 regarding certification pending verification. Section 2313 reads:

"*Certification Pending Verification*

All households whose income, either prior to or after adjustment, places them at the zero purchase level (See 2332), and who are determined to be in need of immediate food assistance, may be certified for program benefits pending verification provided that:

(1) The results of the interview indicate that the household will probably be eligible when full verification has been completed; and

(2) One collateral contact, at a minimum, has been made to obtain additional information which will confirm the statements of the applicant. The collateral contact must be made prior to certifying the household as eligible and the results of the contact entered in the case file. The documentation shall consist of, at least, the name and address of the person or organization contacted; the name of person supplying the name of the collateral contact, a summary of the information obtained during the contact. The EW may make more than one collateral contact if necessary, to confirm the statements made on the application.

The certification pending verification shall not exceed 1 month and there shall be no further issuance to households certified in this manner until full verification is obtained which will confirm the certification action.

The EW shall not certify any household under this procedure more than once during a 6-month period, commencing with the initial issuance under this procedure.

Further, households certified under this procedure are not in any way exempt from any eligibility requirement, including, but not limited to work registration for all employable members of the household who are not otherwise exempt by 2222."

It is this instruction which is the subject of Plaintiffs' and Intervenors' motion for summary judgment against Butz. In particular, the movants attack the requirements in § 2313 that "one collateral contact" be made prior to certification and that "certification pending verification" for any given household be accomplished only once during a six month period. These requirements will be referred to herein as the "one collateral contact" rule and the "six month" rule.

An understanding of California's role in implementing this instruction begins with a survey of California's role in administering the Program. States are given the option of participating in the Food Stamp Program. If they elect to participate, they must administer the Program on the local level. This administration includes the processing of applications for food stamps, the certification of those found to be eligible, and the distribution of the food stamps. See 7 U.S.C. § 2024. California, among other states, has elected to participate in the Food Stamp Program. California Welfare and Institutions Code (CWIC) § 18900 et seq. And it has elected to maximize its participation so the "eligibility of households shall be determined to the extent permitted by federal law." CWIC § 18901. The State of California has delegated to the Department of Benefit Payments the responsibility of entering into and executing all agreements necessary for the participation of the state in the Program. CWIC § 18903. California has delegated the local administrative responsibilities of the Program to the various county welfare departments, subject to the supervision of the Department of Benefit Payments. CWIC § 18902. As a condition of participation in the Program, California and its instrumentalities must administer the Program locally in accordance with Subchapter C of Title 7, CFR and all FNS(FS) Instructions issued

pursuant thereto, and its Plan of Operation. 7 CFR § 271.1(j). States desiring to participate in the Program must submit a plan of operation specifying the manner in which the Program will be conducted within the state, 7 U.S.C. § 2019(e), and the plan of operation must contain an agreement that the state agency in charge will conform with all FNS(FS) Instructions and requirements, 7 CFR § 271.8(c)(1), and the state plan may not be changed without prior approval by FNS. 7 CFR § 271.8(d).

The State of California has opted to participate in the "certification pending verification" procedure, and this commitment is manifested by CWIC § 18914, which provides:

"The county at the time of receiving an application for food stamps shall determine whether or not there exists a need for immediate food assistance. An applicant shall be deemed to be in immediate need if circumstances are such that the applicant appears to be eligible at the zero purchase rate. If it appears that the applicant is eligible for food stamps, and a signed affidavit is on file to this effect, a preliminary certification for food stamp coupons pending verification shall be authorized for at least a two week period and at least one week's issuance shall be granted that same day. This provision shall not apply if the county acts to provide for the applicant's food needs through county funds or other sources."

Subsequent to the issuance of FNS(FS) Instruction 732–1 § 2313, California promulgated through its agency § 63–2314 of the California Public Social Services Manual (hereinafter "PSSM"), which reads:

"63–2314 *Certification Pending Verification*

All households whose income, either prior to or after adjustment, places them at the zero purchase level (see Section 63–2332), and who are determined to be in need of immediate food assistance, may be certified for program benefits pending verification provided that:

a. The results of the interview indicate that the household will probably be eligible when full verification has been completed; and

b. One collateral contact, at a minimum, has been made to obtain additional information which will confirm the statements of the applicant. The collateral contact must be made prior to certifying the household as eligible and the results of the contact entered in the case file. The documentation shall consist of at least, the name and address of the person or organization contacted; the name of person supplying the name of the collateral contact, and a summary of the information obtained during the contact. The EW may make more than one collateral contact if necessary, to confirm the statements made on the application.

The certification pending verification shall not exceed one month and there shall be no further issuance to households certified in this manner until full verification is obtained which will confirm the certification action.

The EW shall not certify any household under this procedure more than once during a six month period, commencing with the initial issuance under this procedure. Further, households certified under this procedure are not in any way exempt from any eligibility requirement, including, but not limited to work registration for all employable members of the household who are not otherwise exempt by Section 63–2222.

The county at the time of receiving an application for food stamps shall determine whether or not there exists a need for immediate food assistance.

An applicant shall be considered to be in immediate need if it appears, subsequent to interview, that (1) the applicant will probably be eligible when certification is completed, (2) eligibility will be at the zero purchase level, and (3) sufficient liquid resources are unavailable. If it appears that the applicant is eligible for food stamps at the zero purchase level, if his application for food stamps is on file,

if at least one collateral contact has been made and if he has completed the work registration document, if applicable, then a preliminary certification for food stamp coupons pending full verification shall be authorized for at least a two-week period and at least one week's issuance shall be granted that same day unless the county acts to provide the applicant's food needs through county funds or other sources."

As is evident, PSSM § 63–2314 adopts the "one collateral contact" and "six month" rules of FNS(FS) Instruction 732–1, § 2313, as requirements of "certification pending verification" and also sets forth an additional requirement for such certification: that the household applying not have "sufficient liquid resources" available. In their motion for summary judgment against the state defendants, the Plaintiffs and Intervenors attack the validity of the "one collateral contact", "six month", and "sufficient liquid resources" requirements of PSSM § 63–2314 for certification pending verification.

As this case was presented to this court on May 3, 1976, the Plaintiffs and Intervenors sought partial summary judgment on the following basic claims with respect to defendant Butz:

1. That USDA FNS(FS) Instruction 732–1, § 2313, is substantively defective in that it is inconsistent and conflicts with 7 CFR § 271.4(a)(2)(iii) by which Secretary Butz is bound;

2. That USDA FNS(FS) Instruction 732–1, § 2313, is procedurally void for non-publication as a substantive rule of general applicability, statement of general policy, or interpretation of general applicability, under the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(D), and is procedurally void for non-publication under the Federal Register Act, 44 U.S.C. § 1505;

3. That the "collateral contact" and "six month" limitations of USDA FNS(FS) Instruction 732–1, § 2313, are procedurally void for their non-publication for notice and comment purposes as proposed regulations prior to implementation, under the Admin-

istrative Procedure Act, 5 U.S.C. § 553(b); and

4. That USDA FNS(FS) Instruction 732–1, § 2313, is procedurally void for want of a regulatory history permitting judicial review.[3]

Based on these claims, the Plaintiffs and Intervenors sought the following relief:

1. That defendant Butz be permanently enjoined from enforcing § 2313 of USDA FNS(FS) Instruction 732–1 and from failing and refusing to implement 7 CFR § 271.4(a)(2)(iii);

2. That § 2313 of USDA FNS(FS) Instruction 732–1 be declared null and void for failure to be properly published in the *Federal Register* as required by 5 U.S.C. §§ 552 and 553 and by 44 U.S.C. § 1505, and for want of a regulatory history permitting judicial review, and as inconsistent with 7 CFR § 271.4(a)(2)(iii); and

3. That the court order defendant Butz to grant retroactive food stamp benefits to those families nationwide whose food stamp applications were unlawfully denied or delayed because of USDA's use of § 2313 of USDA FNS(FS) Instruction 732–1; and that said retroactive benefits should be paid by means of forward adjustments in the price a household must pay for its food stamps.

The issues before the court were modified somewhat on May 7, 1976 when defendant Butz caused to be published in final form in the *Federal Register* 7 CFR § 271.-4(a)(2)(iii), as amended; this provision now provides in pertinent part:

"(iii) Mandatory verification of income at the time of initial certification. Verification of income is also required at the time of subsequent certification, the six month interview, or upon receipt of a monthly report whenever a household's income has changed substantially or the source of income has changed. Others factors affecting eligibility or basis of issuance shall be verified whenever these factors appear unclear, incomplete, inconsistent or otherwise raise doubt. State agencies are, however, encouraged to verify any other factor that would aid in their reduction of certification errors. Particular care should be taken when verifying the income of households whose application or monthly report indicates little or no income and who would therefore not be assigned a purchase requirement. Such households may, however, be certified pending verification of income or other factors of eligibility for no more than one month in a six-month period, provided at least one collateral contact has been made and the household appears to be eligible based on the application or monthly report." 41 *Fed.Reg.* 18781, at 18790.

Thus, while 7 CFR § 271.4(a)(2)(iii) did not previously contain any "one collateral contact" or "six month" restriction on certification of households pending verification, the amended regulation did contain such limitations.

The amended regulation lost its effect when the Assistant Secretary of Agriculture, Richard Feltner, issued the following order on December 20, 1976, in response to the decisions in *Trump v. Butz,* Civil Action

---

**3.** See Plaintiffs' and Intervenors' Memorandum of April 1, 1976, pp. 5, 13, and Defendant Butz' Memorandum of July 19, 1976. While some confusion arose regarding which of Plaintiffs' claims had been presented to the court (see Plaintiffs' Motion of February 11, 1976), the parties appear to have resolved this ambiguity. Plaintiffs have indicated that their motion for partial summary judgment seeks to raise the same objections to USDA FNS(FS) Instruction 732–1, § 2313, as is raised by Intervenors. Plaintiffs' and Intervenors' Memorandum of June 7, 1976, p. 9. And Butz has stated that he has no objection to the court treating the Plaintiffs' claims as the same as Intervenors' provid-

ed that the court finds that the Plaintiffs have standing with respect to the claims asserted. Furthermore, in a document entitled Stipulation of Counsel, filed August 11, 1976, counsel for all parties in this action stipulated that Plaintiffs' and Intervenors' motions for summary judgment (February 11, 1976) and for class certification (February 19, 1976): ". . . shall be considered for all purposes to have been made by both denominated plaintiff-parties [SFNLAF and LAHCRO] in the first amended complaint in this action and plaintiffs-in-intervention in the complaint-in-intervention in this action."

No. 76–933 (D.D.C.1976); and *California v. Butz,* Civil Action No. 76–934 (D.D.C.1976);

> "On May 7, 1976, there was published in the FEDERAL REGISTER (41 FR 18781), revisions in the regulations governing the Food Stamp Program.
>
> The U.S. District Court for the District of Columbia has restrained implementation of these regulations (D.D.C. Civ.Act. No. 76–933 and 934). Therefore, except as they may be otherwise amended or modified, the Food Stamp Program shall be governed by the regulations in effect on May 6, 1976 during the period that court orders are in effect restraining implementation of the May 7, 1976 amendments." 41 Federal Register 250 (Dec. 28, 1976) at p. 56297 (FR Doc. 76–37805 Filed 12–27–76, 8:45 a.m.).

And the amended regulation was rescinded when the Secretary of Agriculture, Bob Bergland, issued the following order on February 2, 1977:

> "The amendments to Parts 270 and 271 of the regulations governing the Food Stamp Program published in the FEDERAL REGISTER of May 7, 1976 (41 FR 18781–18804), are hereby rescinded. Except as they have been or may be otherwise amended or modified, the Food Stamp Program shall be governed by the regulations in effect on May 6, 1976." 42 *Federal Register* 24 (Feb. 4, 1977) at 6817 (FR Doc. 77–3845 Filed 2–3–77; 8:45 a.m.).

### (2) Standing of Plaintiffs and Intervenors

Two distinct standing questions are presented in this case. The first is whether the Plaintiffs and Intervenors have alleged or shown an ". . . 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction . . . ." *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). See also *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Construction Industry Ass'n., Sonoma County v. City of Petaluma,* 522 F.2d 897 (9th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976). The second question is not one involving the constitutional limits of this court's jurisdiction, but rather is one involving the so-called "prudential" limits on the exercise of existing jurisdiction.

Generally, standing is determined by examining the allegations in the complaint. *Coalition for the Environment v. Volpe,* 504 F.2d 156 (8th Cir. 1974); *Schiaffo v. Helstoski,* 492 F.2d 413 (3rd Cir. 1974); *Cicchetti v. Lucey,* 514 F.2d 362 (1st Cir. 1975); *Borelli v. City of Reading,* 532 F.2d 950 (3rd Cir. 1976). But the court may look beyond the allegations in the complaint when the factual basis for a party's standing is contested. *Cf. Sierra Club v. Morton, supra.*

### (a) Standing of Intervenors

Intervenor Miller's standing is attacked by Butz, who contends that Miller did not suffer a denial of or delay in the receipt of food stamps because of the operation of the "collateral contact", "six month", or "sufficient liquid resources" limitations on certification pending verification. Miller's standing as to each of these limitations will be discussed separately.

With respect to Miller, the following factual picture arises from the allegations, affidavits, and exhibits before the court. On September 8, 1975, Miller ceased working when he seriously injured his back, thereby leaving Miller, his wife, and two children without any source of income. Complaint, p. 3; Miller affidavit (Ex. I–A to Complaint), p. 1. Unable to feed their children, Mr. and Mrs. Miller went to the Compton Office of the Department of Public Social Services on September 25, 1975 to apply for food stamps. Miller affidavit, p. 1. Upon arriving at the Compton Office, the Millers applied for "emergency" food stamps [certification pending verification], and were interviewed by Precious Huff, an eligibility worker employed by the Department of

Public Social Services of the County of Los Angeles, Huff affidavit (Ex. 1 to Butz' Memorandum of April 19, 1976), p. 1; Miller affidavit, p. 1. During the course of the interview, Huff indicated that Mr. Miller would need to get a statement from a doctor confirming the fact of his back injury before food stamps could be issued.[4] Huff affidavit, p. 3; Miller affidavit, p. 1; Complaint, p. 3. And Mr. Miller was also told that he would need a statement from someone else verifying the family's lack of income.[5] Miller affidavit, p. 1; Complaint, p. 3. Later the same day, the Millers contacted Huff and indicated that they had obtained the statements requested, and asked if they could then be issued food stamps. Miller affidavit, pp. 1–2; Huff affidavit, p. 3. Huff responded that before food stamps could be issued to the family, the Millers would have to provide a statement from their bank and a "denial of unemployment

insurance benefits" for Mr. Miller. Miller affidavit, p. 1; Huff affidavit, p. 3. Mr. Miller indicated that it would take a "few days" to get the information requested, and an appointment was set for the Millers at the Compton Office for September 30, 1975. Miller affidavit, p. 2. On September 30, 1975, the Millers arrived for the appointment with the information requested (Miller affidavit, p. 2; Huff affidavit, p. 3), but were told that it would take seven to ten days to complete their file. Miller affidavit, p. 2. According to Mr. Miller's uncontradicted affidavit, the following interchange then took place:

"I asked Mrs. Huff how we were supposed to feed our children for the next week. She said that we would just have to wait." (Miller affidavit, p. 2).

That same day, Marsha Jones, a law clerk employed by the Legal Aid Foundation of

---

4. Huff states in her affidavit that this statement was required so that the "work registration requirement" could be "waived." Huff affidavit, p. 3. Under the Food Stamp Act, able bodied adults in a household, with some exceptions (notably mothers with dependent children, such as Mrs. Miller), must be registered to work in order for the household to be eligible for food stamps, while incapacitated adults need not register. 7 U.S.C. § 2014(c). On the application for food stamps, which Mr. Miller signed right below a notice in bold face indicating criminal penalties for making false statements, Mr. Miller indicated that he fit into category "D"—which includes "[p]ersons unable to work for mental or physical health reasons." Attachment to Huff affidavit. Thus, the information given on the application indicated that Mr. Miller was not required to register to be eligible for food stamps, but Huff required Mr. Miller to obtain a statement from a doctor to verify this information. This requirement constituted a request for a "collateral contact." Under USDA FNS(FS) Instruction 732–1, § 2123.1, quoted above, a "collateral contact" is a source of verification which may be obtained by the provision of a document by the applicant.

5. The requirement of a statement by a third party indicating that the Millers were without any income also constituted a request for a "collateral contact," since Mr. Miller indicated on page 2 of the application, completed on September 25, 1975, that the family had no income. The statement must be viewed as an attempt to verify the information given on the application by means of information provided

by a third person. See USDA FNS(FS) Instruction 732–1, § 2123.1. The conclusion that this "income" statement and the doctor's statement were required in order to verify the information given on the application is supported by Huff's statement that an appointment was scheduled for them at the food stamp office after Richard Miller called and "stated they had all the necessary verification." Supplemental Huff affidavit (Ex. 2 to Butz' Memorandum of April 19, 1976). And the conclusion that the "income" statement request was a request for a "collateral contact" is supported by a document entitled "Record of Collateral Contacts (PE)." This document, dated September 30, 1975, the date of the Millers' second interview, and signed by Precious Huff (the signature matches that on her affidavit), has "Richard (Bonnie) Miller" marked in the space provided for "Case Name", "Carl Adley" marked in the space provided for "Person contacted", "Richard & Bonnie Miller" marked in the space provided for "Who supplied the contact's name", and the following marked in the space provided for "Contact's Statement":

"Hous'd has had no income since last check 9–12–75 Waiting for DIB"

Thus, the "Record of Collateral Contacts" (See Ex. 3 to Plaintiffs' and Intervenors' Memorandum of April 26, 1976) clearly corroborates Mr. Miller's statement that he provided Huff with a "collateral contact" to verify the income indicated on his application. It is noteworthy that the "Record of Collateral Contacts (PE)" satisfies the requirements of PSSM § 63–2314 for documenting "collateral contacts."

Long Beach, contacted Huff in regard to the Millers' food stamp application and was told that the Millers could pick up a "week's worth of food stamps" the next day. Jones affidavit (Ex. I–B to Complaint in Intervention), pp. 1–2. See also Huff affidavit, p. 4.

Can it be said, based on the foregoing, that Richard Miller suffered an "injury in fact" as a result of the implementation of the "collateral contact" rule of USDA FNS(FS) Instruction 732–1, § 2313? For the injury in fact to exist, the injury suffered need not be "significant"—a "trifling" injury is enough. *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Miller's food stamp application was delayed in its processing because of the request for collateral contacts to verify information set forth in the application. This delay satisfies the injury in fact requirement.

Miller also seeks standing to attack the "six month" rule of USDA FNS(FS) Instruction 732–1, § 2313. That rule permits households to be certified pending verification only once in a six month period. The Millers were not denied food stamps because of this rule. However, at the time this court heard argument on this case, the Millers were faced with the threat of denial if they again sought certification pending verification within the six month period following September 30, 1975. If this "threat" still existed, the injury in fact test would be satisfied since the threat of injury as well as injury itself satisfies the requirements of Article III. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Laird v. Tatum,* 408 U.S. 1 (1972); *Sierra Club v. Morton, supra; Barlow v. Collins, supra.* Butz argues that since the six month period subsequent to September 30, 1975 has passed, the threat of injury has been mooted. However, Plaintiffs and Intervenors correctly point out that there is an exception to the mootness doctrine which is applicable here. When an otherwise moot claim is of a type which is capable of repetition and yet will evade review, the court retains the requisite

Article III jurisdiction. *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The instant claim fits within this category. There is a strong likelihood that other persons will be either faced with the threat of denial or actual denial of certification pending verification because of the "six month" rule. And because the threat will pass with the expiration of a few months, judicial review will be thwarted. Accordingly, the court finds that Richard Miller has standing to challenge the six month rule.

The court is not satisfied, however, that Miller has standing to challenge the "sufficient liquid resources" limitation. He has not alleged or shown that he has been denied or threatened with denial of food stamps because of the "sufficient liquid resources" rule. While Miller does have standing to challenge portions of PSSM Section 63–2314 which impose the "collateral contact" and "six month" limitations, for the same reasons that he has standing to challenge the same portions of USDA FNS(FS) Instruction 732–1, § 2313, it does not follow that Miller has standing to challenge all of PSSM Section 63–2314, in which the "sufficient liquid resources" limitation is set forth.

Butz also questions the standing of the Gilleys to object to the "collateral contact", "six month" and "sufficient liquid resources" limitations of USDA FNS(FS) Instruction 732–1, § 2313 and PSSM Section 63–2314. With respect to the Gilleys, the record reveals the following facts. After working in the State of Washington picking apples and cherries, the Gilleys (Tom and Helen Gilley and their six children) moved to Yuba County on October 26, 1975. Affidavit of Tom and Helen Gilley (Ex. I–C to Complaint in Intervention) p. 1. They spent the first two nights in Yuba County camped on the river bottom under a bridge because poor weather and the lack of work had prevented them from earning any income during the month of October. Gilleys' affidavit, p. 1. Unable to find work, the Gilleys went to the Yuba County Welfare Department on October 28, 1975 at 8:30

a.m., and asked for assistance. Gilleys' affidavit, p. 1. By this time, they had very little food and only five cents in cash. Gilleys' affidavit, p. 1. Mrs. Gilley was first interviewed that morning by Bessie Johnson, an eligibility worker employed by the Yuba County Welfare Department. Gilleys' affidavit, p. 1; Johnson affidavit (Ex. 3 to Butz' Memorandum of April 19, 1976), p. 1. At this time, Mrs. Gilley did not request aid under the Food Stamp Program, but rather sought aid under the Aid for Dependent Children (AFDC) Program.[6] Johnson affidavit, p. 1. Mrs. Gilley was referred to Mary Ann Bristow, an AFDC eligibility worker employed by the Yuba County Welfare Department; after speaking to Johnson, Bristow told Mrs. Gilley that she would need to provide verification regarding the place of birth of her children by way of birth certificates, school attendance records for five years or baptismal certificates, before being eligible for the AFDC program.[7] Bristow affidavit (Ex. 5 to Butz' Memorandum of April 19, 1976), p. 1. The Gilleys were also told that they would need to have their address verified before they could receive any aid. Gilleys' affidavit, p. 1. Thereafter, the Gilleys again spoke to Johnson, who suggested that they should go to Stockton, California, because they could get aid there. Gilleys' affidavit, p. 1. Johnson then referred Mr. Gilley to a grape farmer to seek work. Johnson affidavit, p. 1. Mr. Gilley went immediately to the farm to seek employ-ment, but was told that there was no work available. Gilleys' affidavit, pp. 1–2; Johnson affidavit, p. 2. About 1:30 p.m. on October 28, 1975, the Gilleys returned to the Yuba County Welfare Department, at which time they were told that they were not eligible for aid because they could not prove how much they had earned in Washington and because they did not have birth certificates for their children.[8] Gilleys' affidavit, p. 2. Johnson asked Mr. Gilley if they intended to stay in Yuba County, and he responded affirmatively, stating that he wanted to put his children in school because they had been out of school for too long. Johnson, affidavit, p. 2. The Gilleys left the Welfare Department after the second interview with Johnson and later returned about 3:00 p.m. with Pat Putynkowski, a CRLA social worker. Gilleys' affidavit, p. 2; Johnson affidavit, p. 3; Groesbeck affidavit, p. 1. Putynkowski and the Gilleys requested "that immediate need be issued in the form of AFDC." Groesbeck affidavit, p. 1. The Gilleys then filled out an AFDC application, which was completed about 3:30 p.m. Groesbeck affidavit, p. 2. After the application was completed, the Gilleys were told that it was too late in the day for immediate AFDC aid to be issued. Groesbeck affidavit, p. 2. Then the CRLA representative asked that "emergency" (certification pending verification) food stamps be issued to the Gilleys. Groesbeck affidavit, p. 2. Groesbeck responded to this request by noting that the "food stamp

6. The Gilleys state in their affidavit that they "were not allowed to fill out applications for aid or food stamps . . ." during the morning of October 28, 1975. One might infer from this that the Gilleys sought relief under the Food Stamp Act that morning. But, Johnson's statement that no such relief was sought has not been controverted, and accordingly the court will read the Gilleys' statement to mean no more than that relief under the Food Stamp Program was not offered that morning. See also Affidavit of Susan Groesbeck (Ex. 4 to Butz' Memorandum of April 19, 1976), p. 1.

7. This statement may be read consistently with the Gilleys' statement that: "We were told that we could not get aid because our address and the American citizenship of our children could not be verified." Gilleys' affidavit, p. 1. The Gilleys' statement regarding the need to have their address verified, being uncontroverted, must be accepted as true.

8. Johnson states in her affidavit that at this second interview she asked the Gilleys if they wanted to stay in a hotel or motel if one could be found, and that they responded affirmatively, and that she "finally" found a hotel. Johnson affidavit, p. 1. It is not clear from this statement whether the hotel was found before the Gilleys left the Welfare Department. The Gilleys' affidavit indicates that they were not informed of the provision of housing until after they returned with a representative from California Rural Legal Assistance (CRLA).

issuance office" was closed for the day,[9] thereby preventing emergency issuance, and by suggesting that the Gilleys return the next day to be interviewed for issuance of food stamps. Groesbeck affidavit, p. 2. Thereafter, the CRLA representative talked to Dean Richmond, the Director of the Welfare Department and Richmond stated that the Gilleys should be seen for General Relief. Groesbeck affidavit, p. 2. The Gilleys were then interviewed by Judy LaChappelle, an eligibility worker employed in the General Relief Program of the Welfare Department, who determined that the Gilley family was eligible for General Relief; as a result of this determination, the Gilleys were given a "voucher" in the amount of $8.00 to be spent for one night's lodging at the Republic Hotel in Marysville, and another "voucher" in the amount of $8.97 to be spent for food at Yuba Market. LaChappelle affidavit (Ex. 6 to Butz' Memorandum of April 19, 1976), p. 1. LaChappelle also certified the Gilleys to receive food stamps for a two week period (October 16 to October 31, 1975); according to LaChappelle: "I did not require any collateral contacts." LaChappelle affidavit, pp. 1–2.

Butz argues that the Gilleys are without standing to object to the "collateral contact" rule because they were not subjected to it. The Gilleys originally argued that they were subjected to the rule in that on October 28, 1975, they were told that they could not receive aid until their address and the place of birth of the Gilley children could be verified. But it now appears from the record that these restrictions were imposed when the Gilleys were applying for AFDC relief and not food stamp relief. The Gilleys now contend that the eligibility workers at the Welfare Department in Yuba County had an obligation to process the Gilleys as food stamp applicants when they first came in on the morning of October 28, 1975, that the court should treat the Gilleys as though they did apply for food

stamps that morning because of this obligation, that the court should find that the collateral contacts required by the Welfare Department of Yuba County were demanded in connection with an application for food stamps, and that consequently the court should find that the Gilleys' receipt of food stamp benefits was delayed one day because of the request for collateral contacts. However, assuming that the Welfare Department's eligibility workers should have initially processed the Gilleys for receipt of food stamps, the court still cannot indulge in the fiction suggested by the Gilleys. The only collateral contacts required were required in connection with an application for AFDC benefits, and no collateral contacts were required of the Gilleys in connection with their food stamp application. Accordingly, the Gilleys were not "injured in fact" by the collateral contact rule and they are without standing to challenge that rule.[10]

While the Gilleys have no standing to challenge the collateral contact rule, it does not follow that they are without standing to object to the "six month" rule. On October 29, 1975, the Gilleys were issued food stamps after being certified pending verification. Once certified on this emergency basis, they were faced with the threat of denial of certification pending verification if they applied again during the next six months. As noted above, such a threat satisfies the "injury in fact" requirement. And, although the threat to the Gilley family has passed, the claim is not moot because the dispute is one which is capable of repetition and yet evading review. *Super Tire Engineering Co. v. McCorkle, supra.* Therefore, the Gilleys have standing to challenge the "six month" rule.

However, the Gilleys do not have standing to challenge the "sufficient liquid resources" rule. This limitation was not applied to the Gilleys and there is no indica-

---

9. The food stamp issuance office closes at 3:00 p.m. LaChappelle affidavit, p. 1.

10. Because the court finds that the Gilleys were not subjected to the collateral contact rule, the

court need not reach Butz' argument that the Gilleys were not injured by its application because they received General Relief on October 28, 1975, and food stamps on October 29, 1975.

tion in their complaint or otherwise that it poses a viable threat to them.[11]

To summarize, with respect to the Intervenors, the court finds that Miller has standing to object to both the "collateral contact" and the "six month" rules, and that the Gilleys have standing to object only to the "six month" rule.[12]

### (b) Standing of Plaintiffs

Butz argues that the two organizational plaintiffs, SFNLAF and LAHCRO are without standing because they fail to satisfy the "injury in fact" test.

SFNLAF seeks to satisfy this test by alleging that it has been injured by the failure of Butz to publish USDA FNS(FS) Instruction 732–1, § 2313 in proposed and final form. It alleges that it is a non-profit California corporation, funded by the federal government, private foundations, and private individuals, which provides legal services to indigent residents of San Francisco, including those engaged in legal proceedings to obtain individual food stamp benefits. First Amended Complaint, p. 12. It further alleges that it is unable to provide "high quality" assistance to food stamp applicants because of the failure of Butz to publish USDA FNS(FS) Instruction 732–1. First Amended Complaint, p. 12. This claim is elaborated upon in the affidavit of David Chavkin (Ex. 1 to Plaintiffs' and Intervenors' April 26, 1976 Memorandum). Chavkin states that SFNLAF represents approximately 1500 food stamp recipients, that to effectively represent such persons, Chavkin, as an attorney employed by SFNLAF, must be familiar with the rules and regulations governing the Food Stamp Program, that SFNLAF subscribes to the Federal Register and that Chavkin reads it on a daily basis, that if a regulation is not published SFNLAF and its employees have no opportunity to learn about changes in USDA policy which might effect SFNLAF clients, and that consequently SFNLAF

may provide its clients with misinformation and make incorrect decisions on its cases because of the failure of USDA to publish a regulation. Chavkin affidavit, pp. 1–2. Thus, SFNLAF's alleged injury is an injury to its ability to effectively represent its clients.

SFNLAF argues that it has suffered a similar injury because of the failure of Butz to publish USDA FNS(FS) Instruction 732–1 in proposed form for notice and comment purposes. According to Chavkin, SFNLAF regularly submits comments to the appropriate governmental agencies on regulations which are published in the Federal Register in proposed form, comments submitted by Chavkin and others have resulted in substantive changes in proposed regulations, and effective representation of SFNLAF clients requires that SFNLAF be given an opportunity to submit comments on behalf of its clients. Chavkin affidavit, p. 2. Chavkin also states that SFNLAF would have submitted comments on Section 2313 of USDA FNS(FS) Instruction 732–1, strongly recommending against its adoption, had the regulation been published in proposed form in the Federal Register, and that SFNLAF lost its opportunity to so represent its clients because of the failure of Butz to publish Section 2313 in the Federal Register in proposed form.

■ Whether SFNLAF's injury to its ability to represent its clients constitutes a cognizable "injury in fact" poses a difficult question. As noted earlier, the injury suffered need not be "significant" in order to satisfy this standing requirement. United States v. SCRAP, supra. And the injury need not be an economic one. Sierra Club v. Morton, supra. It has been recognized that there has been a broadening of categories of injuries that may be redressed. Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). This development has

---

11. It should be noted that the state defendants have indicated that the state is taking steps to eliminate the "sufficient liquid resources" rule from the state regulation.

12. Neither Butz nor the state defendants have contended that the Intervenors lack standing for "prudential reasons."

led commentators to conclude that the injury in fact requirement has been ". . . reduced to little more than a bar against suits by intellectually or emotionally concerned bystanders." 13 Wright, Miller and Cooper, Federal Practice and Procedure, § 3531, p. 196.

Harm to the ability to deliver professional services has been recognized as a cognizable injury in another context. In a number of cases doctors have been found to have standing where they have claimed that anti-abortion laws have interfered with their sound practice of medicine. *Nyberg v. City of Virginia*, 495 F.2d 1342 (8th Cir.), *cert. denied*, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); *Wulff v. Singleton*, 508 F.2d 1214 (8th Cir. 1974), *aff'd on other grounds*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Shaw v. Hospital Auth. of Cobb County*, 507 F.2d 625 (5th Cir. 1975). In *Wounded Knee Legal Defense/Offense Committee v. F. B. I.*, 507 F.2d 1281 (8th Cir. 1974), the Eighth Circuit extended *Nyberg* to find that an attorney has standing to challenge any act which interferes with his professional obligation to his client. The conclusion to be drawn from such cases coincides with the following statement:

"If the complaint has been framed to allege an interference with the plaintiff's practice of his profession, there clearly would be an allegation of sufficient injury in fact to satisfy the minimal requirements of Article III." 13 Wright, Miller and Cooper, Federal Practice and Procedure, § 3531, p. 206.

In the case at bar, SFNLAF has alleged in so many words that the failure to publish USDA FNS(FS) Instruction 732–1, § 2313 has interfered with SFNLAF's legal representation of its clients. Therefore, the court finds that SFNLAF has suffered an injury in fact as a result of Butz' alleged failure to publish the Instruction.

SFNLAF's standing to sue is also objected to by Butz on the ground that the injury suffered by it does not fall within the zone of interests protected by the statutes invoked. Under *Association of Data Processing Service Organizations, Inc. v. Camp, supra*, and *Barlow v. Collins, supra*, a federal court must find that a plaintiff is without standing where the interest sought to be protected is not "arguably" within the zone of interests to be protected or regulated by the statutory framework within which his claim arises. This limitation on standing is not founded on Article III, but rather is a "prudential" limit constructed by the Supreme Court. *Simon v. Eastern Kentucky Welfare Rights Organization, supra*, 426 U.S. at 39, 96 S.Ct. at 1925, fn. 19.

The interest sought to be protected by SFNLAF in the instant case is its interest in having notice of adopted and proposed regulations which affect its clients. Certainly, these are interests which are "arguably" within the zone of interests sought to be protected by 5 U.S.C. §§ 552 and 553, which require publication of certain regulations. Section 552 is designed to provide notice of certain adopted regulations so that those affected by such regulations may take appropriate action to protect their interests. The legal advice given and legal action taken by SFNLAF is affected by notice of the food stamp regulations at issue in this case. Section 553 is designed to provide interested parties with notice of proposed regulations so that such parties may submit comments which might affect the agency's decision to adopt such regulations. SFNLAF has demonstrated that it is a party interested in the proposed food stamp regulations and that it would have submitted comments critical of the regulations in question if they had been published in proposed form. Thus, with respect to SFNLAF's claims based on alleged violations of 5 U.S.C. §§ 552 and 553, SFNLAF's interest falls arguably within the zone of interests sought to be protected by the statutory framework within which its claim arises.[13]

13. Since the court will not reach the merits of the Plaintiffs' and Intervenors' claims against Butz based on alleged violations of federal regulations, the court will not address the question of whether the movants have standing with respect to these claims. The court does note,

LAHCRO, in contrast to SFNLAF, does not seek to base its standing on any injury to itself. Rather, it seeks to satisfy the injury in fact test by suing on behalf of LAHCRO members who have allegedly been injured in fact.

 It is well established that an organization, like LAHCRO, cannot premise its standing on some special interest in the health problems of the poor. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton, supra.* But, it is equally well established that an organization may establish standing by suing as a representative of its members who have been injured in fact, and who could have brought suit in their own right. *Simon v. Eastern Kentucky Welfare Rights Organization, supra; Warth v. Seldin, supra; Sierra Club v. Morton, supra; Construction Industry Ass'n., Sonoma County v. City of Petaluma, supra; Cady v. Morton,* 527 F.2d 786 (9th Cir. 1975). LAHCRO has sought to come within this latter rule by alleging that:

> "Members of LAHCRO are adversely affected by the wrongful actions of defendants, alleged more specifically below, in that they are denied their statutory entitlement to Food Stamp benefits." First Amended Complaint, pp. 3–4.

Reading this and subsequent allegations in the First Amended Complaint with the liberality required by *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), LAHCRO has alleged that its members have been adversely affected in their receipt of food stamps by Butz' past and continuing implementation of USDA FNS(FS) Instruction 732–1, § 2313. While greater detail in pleading would have been preferable, the court finds that these allegations satisfy the "injury in fact" standing requirement.

Defendant Butz argues that LAHCRO should not be permitted to base its standing on injuries suffered by its members because whatever injury may have been suffered is peculiar to each member, thus requiring individualized proof of both fact and extent of injury and compensation due, citing *Warth v. Seldin, supra.* In *Warth,* an organization of contractors (Home Builders) sought to redress injuries suffered by its members because of lost contracts due to zoning laws which excluded persons of low and moderate income from a community. Insofar as prospective relief was sought by an organization, the Supreme Court held that an organization could assert the rights of its members:

> "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." 422 U.S. at 515, 95 S.Ct. at 2213.

Thus, in the instant case LAHCRO's claim for declaratory and injunctive relief is clearly within the bounds permitted by *Warth.* The *Warth* court then had this to say about the organization's prayer for damages:

> "The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of

---

however, that SFNLAF is without standing to attack the use of the "sufficient liquid resources" rule adopted by California and allegedly ratified by the federal defendant.

SFNLAF has never subjected itself to the restraints of that rule, and there is no indication that SFNLAF was otherwise "injured in fact" by the rule.

Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf." 422 U.S. at 515, 95 S.Ct. at 2214. Two concerns are apparent from the foregoing. First, the organization should not be permitted to recover damages suffered by its members because it has not suffered any injury itself. Second, the organization should not be permitted to recover damages suffered by its members because the members will have to come to court to prove their claims and therefore the members should be made parties.

These concerns have no real application in the instant case because of the relief sought. First, LAHCRO is not seeking to have paid to it the damages suffered by its members. Rather, LAHCRO is seeking, as are all the movants, to have the benefits lost as a result of the implementation of the challenged Instruction, returned directly to the food stamp recipients by means of forward adjustments in the cost of food stamps. This procedure was adopted in *Anderson v. Butz*, 428 F.Supp. 245 (E.D.Cal. 1975) (per Judge Fitzgerald), *affirmed, Anderson v. Butz*, 550 F.2d 459 (9th Cir. 1977), a case in which retroactive benefits were awarded to compensate food stamp recipients for benefits lost due to the implementation of another provision of USDA FNS(FS) Instruction 732–1. By utilizing this direct means of compensation there is no question but that: "the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin, supra*, 422 U.S. at 515, 95 S.Ct. at 2213.

Second, because this action is brought as a class action, encompassing all those who have been injured as a result of the implementation of USDA FNS(FS) Instruction 732–1, § 2313, all those members of LAH-CRO who have been injured by Section 2313, and whom LAHCRO seeks to represent, will be parties to this suit. Therefore, *Warth v. Seldin*, where no class action was sought and where the members were not otherwise parties to the suit, is inapposite.

██ Butz also argues that LAHCRO lacks standing because its interest does not fall within the zone of interests protected by the statutory framework from which the claim arises. Among the interests protected by the FOIA is the interest of those affected by a regulation in being apprised of its contents. See *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Administrator, F. A. A. v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). LAHCRO's members who have been adversely affected by § 2313 do, therefore, arguably fall within the zone of interests protected by the FOIA. The rule making provisions of the APA, 5 U.S.C. § 553, are designed to assure fairness and mature consideration of certain regulations by permitting interested parties to comment on them prior to their adoption. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). LAHCRO's members adversely affected by § 2313 certainly fall within this broad zone.[14]

### (3) Merits of Summary Judgment Motion Against Federal Defendant

Plaintiffs and Intervenors ask the court to declare that the "collateral contact" and "six month" rules, set forth in USDA FNS(FS) Instruction 732–1, § 2313, were adopted in violation of the rule making provisions of the APA, 5 U.S.C. § 553, to order that the rules be set aside as void, to enjoin enforcement of these rules, and to order compensation for lost benefits through forward adjustments in the cost of

---

14. As noted in Footnote thirteen, the court will not address LAHCRO's standing with respect to its claims against Butz, because the court will not reach the merits of these claims, for the reasons stated below. The court finds, however, that LAHCRO, like SFNLAF, is without standing to complain about the "sufficient liquid resources" rule because the allegations in its complaint do not indicate that this rule was ever applied to its members to restrict their access to food stamp benefits. There is no indication from the record that LAHCRO's members have been injured in fact.

food stamps to recipients. Section 553 of Title 5 of the United States Code provides:

"(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this section.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

A "rule" within the meaning of the APA, is defined as:

". . . the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ." 5 U.S.C. § 551(4). And "rule making" is defined in the APA as ". . . agency process for formulating, amending, or repealing a rule . . ." 5 U.S.C. § 551(5).

The federal defendants do not dispute that Instruction 732–1, § 2313 is a "rule" within the meaning of the APA. They do contend, however, that this instruction was not required to be published in the *Federal Register* thirty (30) days prior to its effective date because it comes within the exception provided by 5 U.S.C. § 553(b)(A) for:

". . . interpretative rules, general statements of policy, or rules of agency organization, procedure or practice . . . ."

The court begins with the proposition that:

". . . the label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact." *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 481 (2nd Cir. 1972).

See also *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *Continental Oil Co. v. Burns*, 317 F.Supp. 194 (D.Del.1970); *Kelly v. United States Dept. of Interior*, 339 F.Supp. 1095 (E.D.Calif.1972); *Piercy v. Tarr*, 343 F.Supp. 1120 (N.D.Calif.1972); *Anderson v. Butz, supra.*

■ Interpretative rules ". . . consist of administrative construction of a statutory provision on a question of law reviewable in the courts." *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 290, 507 F.2d 1107, 1113 (1974). See also *National Restaurant Ass'n v. Simon*, 411 F.Supp. 993 (D.D.C.1976). They do not have the force of law. *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688 (2nd Cir. 1975); *National Ass'n of Ins. Agents Inc. v. Board of Governors of Federal Reserve System*, 160 U.S.App.D.C. 144, 489 F.2d 1268 (1974); *Reyes v. Klein*, 411 F.Supp. 1241 (D.N.J.1976). As noted in *National Ass'n of Ins. Agents, Inc., supra*:

"This court long ago recognized the difference, in terms of the necessity for notice and hearing, between regulations having the force of law, on the one hand, and interpretative rules, on the other: Administrative officials frequently announce their views as to the meaning of regulations. Generally speaking, it seems to be established that 'regulations' . . are those which create law, whereas *interpretative rules are statements as to what the administrative officer thinks the regulation means.* (Emphasis supplied). *Gibson Wine Co. v. Snyder*, 90 U.S.App.D.C. 135, 194 F.2d 329 (1952)." 160 U.S.App.D.C. at 146, 489 F.2d at 1270.

■ The "collateral contact" and "six month" rules set forth in the instruction in question have the force of law. As discussed above, the state agency implementing the Program must act in accordance with the instructions issued by the FNS, as required by 7 CFR § 271.1(j), which provides:

"*Administration of certification and issuance.* Each State agency shall administer the program in accordance with the provisions of this subchapter, all FNS Instructions issued pursuant thereto, and its Plan of Operation."

Therefore, the instruction constitutes a mandate from the FNS and not merely a statement of what the FNS thinks the regulations mean. The instruction provisions in dispute do not come within the "interpretative rule" exception to the obligation to publish for notice and comment purposes.

■ Procedural rules are those that relate to the method of operation of the agency, while substantive rules are those which establish standards of conduct or entitlement. *Kessler v. F.C.C.*, 117 U.S.App.D.C. 130, 326 F.2d 673 (1963). Compare *Ranger v. F.C.C.*, 111 U.S.App.D.C. 44, 294 F.2d 240 (1961). The requirement that the eligibility worker on a case obtain a *minimum* of one collateral contact with respect to a food stamp application prior to certifying the applicant "pending verification" does not squarely fall within either the "procedural" or the "substantive" categories. The rule is procedural in the sense that it governs the tasks that the eligibility worker must undertake prior to certifying an applicant pending verification. However, in light of the purpose of the emergency verification program—to provide a means of delivering food to the utterly destitute without the human suffering that accompanies bureaucratic delays—the imposition of a rule which may delay the delivery of food indefinitely while the applicant forages for verification of his poverty, ill-health or unemployment must be seen as the imposition of a rule which is substantive in effect. The ability to provide the number of collateral contacts demanded by the eligibility worker becomes a condition of relief which is just as substantial as the requirement of a zero-purchase level income.

■ But, it is unnecessary for the court to resolve whether the "collateral contact" rule is procedural or substantive in nature. The procedural rules embraced by the § 553(b)(A) exception to the duty to provide notice by publication do not include those procedural rules which depart from existing practice and have a significant impact on

those regulated. *Lewis-Mota v. Secretary of Labor, supra* ; *Noel v. Chapman*, 508 F.2d 1023 (2nd Cir. 1975); *Pickus v. United States Board of Parole, supra* ; *Texaco, Inc. v. Federal Power Commission*, 412 F.2d 740 (3rd Cir. 1969); *Anderson v. Butz, supra* ; *Lewis v. Weinberger*, 415 F.Supp. 652 (D.N.M.1976); *St. Francis Memorial Hosp. v. Weinberger*, 413 F.Supp. 323 (N.D.Calif. 1976); *Nader v. Butterfield*, 373 F.Supp. 1175 (D.D.C.1974); *Pharmaceutical Manufacturers Association v. Finch*, 307 F.Supp. 858 (D.Del.1970); *National Motor Freight Traffic Ass'n v. United States*, 268 F.Supp. 90 (D.D.C.1967), *aff'd per curiam* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968). This exception to the exemption provided by 5 U.S.C. § 553(b)(A) is partly the result of the recognition that:

"... the characterizations 'substantive' and 'procedural'—no more here than elsewhere in the law—do not guide inexorably to the right result, nor do they really advance the inquiry very far." *National Motor Freight Traffic Ass'n v. United States, supra* 268 F.Supp. at 96.

So instead of relying on the definition of the words "substantive" and "procedural," courts have looked to the purpose of the notice and comment rule [Section 4 of the APA, 5 U.S.C. § 553]:

"Attempting to provide a facile semantic distinction between an 'interpretative and procedural' rule on the one hand and a 'substantive' rule on the other does little to clarify whether the regulations here involved are subject to the notice and comment provisions of Section 4 of the Administrative Procedure Act. Rather that determination must be made in the light of the basic purpose of those statutory requirements. The basic policy of Section 4 at least requires that when a proposed regulation of general applicability has a substantial impact . . . ., notice and opportunity for comment should first be provided." *Pharmaceutical Manufacturers Ass'n v. Finch, supra*, 307 F.Supp. at 863.

In the case at bar, the adoption of the "collateral contact" rule, which permits an eligibility worker to exact from the applicant as many collateral contacts as the worker wants before certifying the applicant pending verification, constitutes a clear departure from previous practice which portends a significant impact on those hungry families which must endure the certification process. Prior to the issuance of the instruction there was no requirement that the eligibility worker withhold certification pending verification until a minimum of one collateral contact was obtained. And those households which must do without food until the contact(s) is provided certainly feel a "significant impact." Accordingly, the court finds that the "collateral contact" rule set forth in USDA FNS(FS) Instruction 732–1, § 2313, does not come within the exception provided for by 5 U.S.C. § 553(b)(A), and that it should have been published in the *Federal Register* thirty (30) days prior to its effective date. Since it is undisputed that the "collateral contact" rule was not so published, it was adopted in violation of notice and comment provisions of the APA and must be declared void and set aside. *Hotch v. United States*, 212 F.2d 280, 14 Alaska 594 (9th Cir. 1954); *Anderson v. Butz*, 428 F.Supp. 245 (E.D.Cal.1975), *aff'd*, 550 F.2d 459 (9th Cir. 1977). This result is required by 5 U.S.C. § 706, which provides in pertinent part:

"The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .."

The "six month" rule must meet the same fate. This rule cannot be considered an "interpretative" rule because it is a mandatory directive to the various state agencies. The six month rule is also not a "procedural" rule because it is a clear limitation on entitlement. Regardless of what procedural steps the applicant takes, the applicant may only be certified once in a six month period on a "pending verification" basis.

And even if the court were able to characterize the six month rule as "procedural," the court would be compelled to find that it does not fall within the exception to the notice and comment requirement because it constitutes a departure from existing practice which has a significant impact on those regulated. No six month limitation existed prior to the issuance by the FNS of Instruction 732–1. Furthermore, the six month limitation completely cuts off from the emergency issuance program those who have already received stamps on a certification pending verification basis during the previous six months. Those cut off certainly feel a significant impact as they wait while the normal certification process is carried on. Consequently, the court must find that the six month rule should have been published in the *Federal Register* thirty (30) days prior to its effective date, as required by 5 U.S.C. § 553(b) and (d). Since it is undisputed that the rule was not so published, the court must, pursuant to 5 U.S.C. § 706, declare void and set aside the six month rule set forth in USDA FNS(FS) Instruction 732–1, § 2313. *Hotch v. United States, supra.*

Words once spoken by this court are worth repeating at this point:

"Voiding the present regulations on what at first blush appears to be a technicality is not as pointless as it may seem. We believe that the 30-day notice rule serves an important interest, the right of the people to present their views to the government agencies which increasingly permeate their lives. The interchange of ideas between the government and its citizenry provides a broader base for intelligent decision-making and promotes greater responsiveness to the needs of the people, especially in cases such as this where Congress has only roughed in its program. Indeed, a meaningful pre-publication dialogue between plaintiffs and the Secretary may have even avoided this lawsuit." *Kelly v. United States Dept. of Interior, supra* 339 F.Supp. at 1102.

Plaintiffs and Intervenors also seek to have this court declare that the "collateral contact" and "six month" rules set forth in USDA FNS(FS) Instruction 732–1, § 2313, were adopted in violation of the Freedom of Information Act provisions of the APA, 5 U.S.C. § 552(a)(1). The FOIA requires the publication in the *Federal Register* of certain types of rules after they have been adopted and become effective.

At the time Plaintiffs and Intervenors moved for summary judgment on their respective complaints, the six month and collateral contact rules had not been published in the *Federal Register* in final form, and the movants contended that these rules were null and void for want of such publication. Thereafter, as detailed above, the federal defendants caused to be published the six month and collateral contact rules as part of new revisions to the food stamp regulations. 41 *Federal Register* 18790. As a result of this publication, the federal defendants argued that Plaintiffs' and Intervenors' claims based on the failure to publish in final form after adoption were moot. In response, Plaintiffs and Intervenors filed with the court a supplemental complaint, pursuant to FRCP 15(d), setting forth the fact of subsequent publication and contending that the revised regulations were invalid insofar as they adopted the six month and collateral contact rules because that part of the revised regulations had not been published in proposed form in the *Federal Register* thirty days prior to its effective date as required by 5 U.S.C. § 553. After the filing of this supplemental complaint, the federal government suspended (41 *Federal Register* 250) and then rescinded (42 *Federal Register* 24) the revised regulations which contained the six month and collateral contact rules. The Food and Nutrition Service has not suspended or rescinded the six month and collateral contact rules set forth in USDA FNS(FS) Instruction 732–1, § 2313. Inasmuch as the disputed rules remain vital within Instruction 732–1, and the only attempt to publish these rules in final form has been rescinded, the court finds that the Plaintiffs' and Intervenors' claims, based on the failure of the federal defendants to publish the dis-

puted rules in final form after adoption, are not moot. However, inasmuch as the revised regulations have been rescinded, the Plaintiffs' and Intervenors' claims, set forth in their supplemental complaint, are moot. A case becomes moot " . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. . . . " *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Now that the revised regulations have been rescinded, the Plaintiffs and Intervenors are without any "legally cognizable interest in the outcome" of their claim to set aside the revised regulations.

Turning to Plaintiffs' and Intervenors' FOIA claims, the court begins by examining the relevant portions of 5 U.S.C. § 552, which provide:

"(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which it functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency

. . . .

* * * * * *

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

* * * * * *

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . . ."

The movants argue that the six month and collateral contact rules should have been published either as a rule of procedure, pursuant to § 552(a)(1)(C) or as any of the rules described in § 552(a)(1)(D).

If the six month and collateral contract rules are rules of "procedure," the federal government was obligated under § 552(a)(1)(C) to publish these rules in the *Federal Register* at the time they were adopted. This is in contrast to the lack of any duty to publish proposed procedural rules, which do not have a significant impact, for notice and comment purposes pursuant to § 553(b)(A):

"While an agency is not required under 5 U.S.C. § 553(b)(A) to give notice of proposed rule making with invitation to comment on rules of agency organization procedure and practice, publication in the Federal Register of promulgated rules of agency organization and procedures is required under 5 U.S.C. § 552(a)(1)(A), (B), (C). Moreover, knowledge of the internal procedures and operations of an agency may be of great value to members of the public in their individual dealings with the agency." *Anderson v. Butz,* 428 F.Supp. 245, 249 (E.D.Cal.1975), *aff'd* 550 F.2d 459 (9th Cir. 1977).

Whether the rules in question are "procedural" rules within the meaning of § 552(a)(1)(C) does not depend on the label affixed to the rule by the agency. *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563; *Anderson v. Butz,* 428 F.Supp. 245 (E.D.Calif.1975), *aff'd* 550 F.2d 459 (9th Cir. 1977); *City of New York v. Diamond,* 379 F.Supp. 503 (S.D.N.Y.1974). Therefore, the fact that the federal defendants have contended, in their opposition to the notice and

comment claims discussed above, that the collateral contact and six month rules are procedural, is not dispositive. The court must make its own inquiry. As indicated above, the collateral contact rule takes on elements of both procedural and substantive rules. It appears procedural in form, but substantive in effect. However, as will be demonstrated below, whether or not the collateral contact rule is a procedural rule, it comes with the publication requirements of § 552(a)(1).

 If the collateral contact rule is not a procedural rule, required to be published under § 552(a)(1), it must be categorized as a § 552(a)(1)(D) rule, which also must be published. Under the FOIA, the collateral contact rule must be deemed either a procedural rule, a substantive rule, an agency statement of interpretation, or an agency statement of policy. As noted above, an interpretative rule is merely a statement of what the agency thinks a regulation or statute means and does not have the force of law. *National Nutritional Foods Ass'n v. Weinberger, supra.* The collateral contact rule was issued by the FNS, pursuant to power delegated to it by the Secretary of Agriculture, and as part of an instruction which must be obeyed by state agencies administering the Program. 7 CFR 271.1(j). As such, it has the force of law, and therefore is not an interpretative rule. However, even if the collateral contact rule were deemed an interpretative rule, it would be categorized as an interpretative rule of "general applicability," a type of rule which must be published under § 552(a)(1)(D). An interpretative rule of general applicability is one which constitutes a change from existing practice and has a significant impact upon a segment of those regulated. *Anderson v. Butz,* 550 F.2d 459 (9th Cir. 1977); *Lewis v. Weinberger,* 415 F.Supp. 652 (D.N.M.1976). The collateral contact rule did change existing practice which did not require a minimum of one collateral contact before certifying an applicant "pending certification." And the application of the collateral contact rule will have a substantial impact on a segment of those regulated. Families seeking emergency food stamp issuance will be subjected to indefinite delays in obtaining an adequate diet by this rule which requires the eligibility worker to exact one collateral contact as a condition of relief and which authorizes the eligibility worker to demand additional collateral contacts continually as a condition of relief.

 It must be further observed that the collateral contact rule does not constitute a statement of agency policy. A statement of policy is a declaration which is used as a "touchstone for future administrative action." *Ash Grove Cement Co. v. Federal Trade Commission,* 171 U.S.App. D.C. 285, 519 F.2d 934, 935 (1975). The collateral contact rule is not a "touchstone," but rather is a particularized mandate which must be obeyed by the state agencies administering the Program. See *National Motor Freight Traffic Ass'n v. United States, supra.* Neither is the collateral contact rule a "general" statement of policy. Such statements do not impose rights and obligations, *Texaco, Inc. v. Federal Power Commission, supra,* and do not have a substantial impact on those regulated. *Lewis-Mota v. Secretary of Labor, supra; Pickus v. United States Board of Parole, supra; Lewis v. Weinberger, supra.* The collateral contact rule does impose an obligation on the emergency food stamp applicant and does have a substantial impact on those seeking emergency food stamp certification.

Inasmuch as the collateral contact is neither a statement of policy nor an interpretative rule (except possibly an interpretative rule of general applicability which must be published), it must be either a procedural rule or a substantive rule. If it is a procedural rule, it must be published. If it is a substantive rule of general applicability it must also be published pursuant to § 552(a)(1)(D). If the collateral contact rule is a substantive rule, it must be a substantive rule of general applicability. A substantive rule of general applicability, by analogy to an interpretative rule of general applicability, is a substantive rule which changes existing practice and has a sub-

stantial impact on a segment of those regulated. The collateral contact rule does constitute a deviation from previous practice, and as explained above, has a substantial impact on those regulated.

■ Therefore, by the process of elimination, the court concludes that the collateral contact rule is either a procedural rule which must be published pursuant to § 552(a)(1)(C) or a substantive rule of general applicability which must be published pursuant to § 552(a)(1)(D). Since it is undisputed that the only publication of this rule was as part of a regulatory package which has been rescinded, the court finds that the federal defendant has violated the FOIA by implementing a rule which has not been published in final form. Therefore, pursuant to 5 U.S.C. § 706, the court must declare the collateral contact rule, set forth in USDA FNS(FS) Instruction 732–1, § 2313, invalid and set it aside.

The six month rule also comes within the publication requirement of § 552(a)(1)(D). The rule is not a rule of procedure. Rather, it is a limitation on entitlement under the emergency food stamp program. It sets a standard which eliminates a segment of applicants for consideration on a "certification pending verification" basis. As a standard, it is a substantive rule. And as a standard which constitutes a departure from existing practice and which has a substantial impact on those regulated, it is a substantive rule of general applicability which must be published pursuant to § 552(a)(1)(D). Since the six month rule was only published as part of a regulatory package which has been rescinded, for purposes of the motions before this court the rule has not been published and must be declared invalid and set aside pursuant to 5 U.S.C. § 706.[15]

■ Inasmuch as defendant Butz has implemented the collateral contact and six month rules in violation of 5 U.S.C. §§ 552 and 553, it is appropriate for this court to enjoin the Secretary of Agriculture from continuing to implement the collateral contact and six month rules and from failing to enforce the provisions of 7 CFR § 271.-4(a)(2)(iii), until such time as these rules are adopted and published in accordance with 5 U.S.C. §§ 552 and 553. See *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315, *rehearing denied* 411 U.S. 988 (1973); *Hamilton v. Butz*, 520 F.2d 709 (9th Cir. 1975).

■ Plaintiffs and Intervenors also ask this court to order the Secretary to compensate those who have lost benefits by reason of the implementation of the collateral contact and six month rules by making forward adjustments in the cost of purchasing stamps. This relief was ordered by the district court in *Anderson v. Butz, supra.* And in *Hamilton v. Butz, supra*, the Ninth Circuit ordered the district court to make some provision for compensating Alaska Natives for food stamp overcharges because of unlawful action by the Secretary. 520 F.2d at 714.[16] The use of forward adjustments in the cost of food stamps has met with acceptance by the Third, District of Columbia, and Sixth Circuits. *Carter v. Butz*, 479 F.2d 1084 (3rd Cir. 1973); *Bermudez v. United States Dept. of Agriculture*, 160 U.S.App.D.C. 150, 490 F.2d 718 (1973); *Stewart v. Butz*, 491 F.2d 165 (6th Cir. 1974). Forward adjustments are made by discounting the price paid for stamps by those families whose food stamp applica-

---

**15.** Because the collateral contact and six month rules have general applicability and legal effect, the publication requirement of the Federal Register Act, 44 U.S.C. § 1505, also seems to apply here. However, the court need not reach this question because the rules are independently required to be published by 5 U.S.C. § 552. See *Anderson v. Butz, supra.* Similarly, it is unnecessary for the court to reach the claims based on the inconsistency between the instruction in dispute and the pub-

lished regulations and the claim based on the lack of an administrative record permitting judicial review.

**16.** *Hamilton's* clear mandate overcomes any argument by the government that forward adjustments are precluded by the doctrine of sovereign immunity. Compare *Scholder v. United States*, 428 F.2d 1123 (9th Cir. 1970). See also 28 U.S.C. § 1331(a), as amended by Pub.L. 94–574 on Oct. 21, 1976.

tions were unlawfully denied or delayed because of the implementation of the collateral contact and six month rules. Although the state agencies were the instrument for the enforcement of these rules, the federal government should be the party compensating the applicants because it is responsible for the benefit costs of the program and the state was required by federal regulations to follow the instructions issued by the FNS. *Bermudez v. United States Dept. of Agriculture, supra.* As in the district court's decision in *Anderson v. Butz, supra,* the federal defendant will be required to submit a plan for compliance with this court's order, which will contain a provision for compensation by forward adjustments.

### B. Summary Judgment Motion Against State Defendants

In their motion for summary judgment against the state defendants, Plaintiffs and Intervenors seek to have the court strike down the collateral contact, six month, and sufficient liquid resources rules set forth in PSSM § 63–2314.[17] Movants contend that the limitations imposed by these rules are void as inconsistent with the only valid federal regulations governing certification pending verification [7 CFR § 271.4(a)(2)(iii)]. Underlying this contention is the argument that § 2313 of USDA FNS(FS) Instruction 732–1 is void for the reasons discussed above. Plaintiff and Intervenors further maintain that PSSM § 63–2314 is invalid as in violation of CWIC §§ 18901[18] and 18914.[19]

 Because the court has found that the six month and collateral contact rules are a nullity, the only valid federal regulations governing certification pending verification are those set forth at 7 CFR § 271.4(a)(2)(iii), which do not impose the limitations set forth in § 2313 of USDA FNS(FS) Instruction 732–1. Since the collateral contact and six month limitations conflict with the federal regulatory scheme, they must be declared invalid under the Supremacy Clause. *Messier v. Zeiller,* 373 F.Supp. 1198 (D.N.H.1974). See also *Homemakers, Inc., of Los Angeles v. Division of Indus. Welfare,* 509 F.2d 20 (9th Cir. 1974), cert. denied 423 U.S. 1063, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976). The state defendants do not dispute the invalidity of the collateral contact and six month rules set forth in the federal instruction. Nor do they question the inconsistency of PSSM § 63–2314 and the federal regulations which govern certification pending verification, 7 CFR § 271.4(a)(2)(iii). Instead, they seek to excuse the inconsistency by pleading that they were bound by federal regulations to comply with FNS instructions, including USDA FNS(FS) Instruction 732–1, and that the state regulations under attack were adopted solely to comply with the federal instruction. While it is true that the state defendants were required by federal law to comply with FNS instructions, it does not follow that they were required to comply with invalid instructions. The fact remains that the state regulations conflicted with the only valid federal regulations governing certification pending verification, and therefore are invalid. However, because the state agencies merely implemented the invalid state regulations pursuant to their obligation to comply with federal instructions, it is all the more appropriate that the

---

**17.** Since neither Plaintiffs nor Intervenors have been injured by the application of the sufficient liquid resources rule, they lack standing to assert its invalidity. Therefore, the court will not address the legality of the sufficient liquid resources rule.

**18.** Section 18901 of the CWIC provides that: "The eligibility of households shall be determined to the extent permitted by federal law."

**19.** Section 18914 of the CWIC provides that: "The county at the time of receiving an application for food stamps shall determine whether

or not there exists a need for immediate food assistance. An applicant shall be deemed to be in immediate need if circumstances are such that the applicant appears to be eligible at the zero purchase rate. If it appears that the applicant is eligible for food stamps, and a signed affidavit is on file to this effect, a preliminary certification for food stamp coupons pending verification shall be granted that same day. This provision shall not apply if the county acts to provide for the applicant's food needs through county funds or other sources."

federal government, and not the State of California, reimburse those who lost benefits because of the use of the collateral contact and six month rules.

■ Plaintiffs and Intervenors are also entitled to prevail on their pendent state claim. California law requires that food stamp applicants' eligibility be determined "to the extent permitted by federal law." By imposing limitations on eligibility which are not mandated by federal law, the state defendants have violated CWIC 18901. The implementation of the collateral contact and six month rules also violated CWIC § 18914, which provides for certification "pending verification" without any "once in six months" limitation. Since CWIC § 18914 provides for certification pending verification if the applicant appears to be eligible at the zero purchase level, the requirement of some verification in the form of a collateral contact violates state law. Furthermore, since the state law embodied in CWIC § 18914 requires certification pending verification without limitation with respect to the use of such certification over time, the six month rule violates state law.

Since the collateral contact and six month rules, set forth in PSSM § 63–2314, violate both federal and state law, they must be declared invalid and set aside, and the state defendants must be enjoined from implementing said rules and from failing to implement the provisions of 7 CFR § 271.-4(a)(2)(iii), which govern certification pending verification.

## II. State Defendants' Motion for Summary Judgment

State defendants have moved this court for summary judgment on their cross-claim which complains that USDA FNS(FS) Instruction 732–1, § 2313 is invalid for want of publication in proposed form, for notice and comment purposes (5 U.S.C. § 553), and in final form, for informational purposes (5

U.S.C. § 552; 44 U.S.C. § 1505). Plaintiffs and Intervenors have filed a notice joining in the state defendants' motion for summary judgment. As relief the state defendants ask this court to declare § 2313 invalid and to enjoin defendant Butz from issuing FNS instructions relating to standards of eligibility, general program policy, and program interpretations of general application without publication in the *Federal Register* in conformity with 5 U.S.C. §§ 552 and 553, and 44 U.S.C. § 1505. In opposition to this motion for summary judgment, defendant Butz questions the standing of the state defendants to attack the federal instruction, and maintains that the disputed federal instruction was not required to be published in the *Federal Register.*

Butz argues that the state defendants are without standing because they have not been "injured in fact," within the meaning of *Barlow v. Collins, supra,* and because the interest of the state does not fall within the zone of interests protected by the statutes claimed to be violated.

■ To have standing, the state defendants' pleadings must reveal that they have been injured or subject to the threat of injury by the issuance of USDA FNS(FS) Instruction 732–1, § 2313. State defendants have sought to satisfy this requirement by alleging that they may be subjected to criminal prosecution and by arguing that they have been denied their right as interested parties to comment on the instruction prior to its adoption.

Although under some circumstances state officials may be criminally prosecuted for improperly issuing food stamps, the state defendants have failed to cite any federal or state law which would render them criminally responsible for failing to issue food stamps when they should be issued. Reference has been made by the parties to 7 CFR § 270.4[20] and to 7 U.S.C. § 2023,[21] but

---

**20.** Section 270.4(b) of 7 CFR provides:

"Any unauthorized issuance, use, transfer, acquisition, alteration, possession, or presentation of coupons or ATP cards may subject any individual, partnership, corporation, or other legal entity involved to prosecution under sections 14(b) and (c) of the Food Stamp Act."

**21.** Sections 2023(b) and (c) of 7 U.S.C. (Sections 14(b) and (c) of the Food Stamp Act) provide:

neither of these provisions outlaw the failure to issue food stamps when they should have been issued. Since the implementation of the collateral contact and six month rules by the federal defendant and the state defendants only resulted in the failure to issue food stamps to eligible applicants, it is difficult to see how the federal defendant's unlawful action subjected the state defendants to a threat of criminal prosecution. Accordingly, the alleged threat of criminal prosecution does not satisfy the injury in fact requirement.

By failing to publish the collateral contact and six month rules for notice and comment purposes, as required by law, the federal defendant denied California the opportunity to comment on rules which substantially affect the welfare of its citizens. However, nowhere in the cross-claim of California is it alleged that the state would have exercised its right to comment had it received notice. No affidavits have been offered by the state to demonstrate that it would have commented. And the state has not even argued in its brief that it would have commented on the rules had they been published for notice and comment purposes. While the state defendants make a good argument for the proposition that publica-

tion will make the Food Stamp Program operate more efficiently,[22] the court cannot find that the state defendants have been injured in fact by the failure to publish by the federal defendant. Accordingly, the court must find that the state defendants lack standing to complain about the lack of publication of § 2313 of USDA FNS(FS) Instruction 732–1.

## III. Motion for Class Certification

Pursuant to FRCP 23(c)(1), Plaintiffs and Intervenors have moved the court to certify their action as a class action.[23] They seek to have certified as a class all those applicants:

" . . . whose application for food stamps was denied, delayed, or never made, or whose application will, in the future, be denied, delayed, or never made as a result of (defendant Secretary BUTZ' invalidly promulgated FNS Instruction 732–1, § 2313), his refusal to conform (USDA and State Agency), practices with 7 C.F.R. § 271.4(a)(2)(iii), or (because of the adverse application of) any state regulation promulgated to implement FNS Instruction 732–1, § 2313." Plaintiffs' and Intervenors' Memorandum of April 1, 1976, p. 22.

"(b) Whoever knowingly uses, transfers, acquires, alters or possesses coupons or authorization to purchase cards in a manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization to purchase cards are of the value of $100 or more, be guilty of a felony and shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years or both, or, if such coupons or authorization to purchase cards are of a value of less than $100, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not more than $5,000 or imprisoned for not more than one year, or both.

(c) Whoever presents, or causes to be presented, coupons for payment or redemption of the value of $100 or more, knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter shall be guilty of a felony and shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years or both, or, if such coupons are of a value of less than $100, shall be guilty of a misdemeanor and shall, upon conviction there-

of, be fined not more than $5,000 or imprisoned for not more than one year, or both."

**22.** The state defendants contend:

"The opportunity to submit comments and objections is an important link between federal government and the state governments since it provides an opportunity for input from the organizations actually responsible for processing applications for food stamps. Providing such an opportunity may go far toward checking, or at least controlling, the current morass of federal rules and procedures which flow to the states on an almost daily basis. Permitting the defendants to participate in the writing of such regulations as is required by federal law, may go far toward establishing a rational approach to the Food Stamp Program." State Defendants' Motion for Summary Judgment, p. 10.

**23.** Originally, Plaintiffs and Intervenors sought the certification of two subclasses: one nationwide class and one class limited to California food stamp applicants. Subsequently this request was modified so that only a unitary nationwide class was sought to be certified. Plaintiffs' and Intervenors' Memorandum of April 1, 1976, p. 21.

In order to warrant certification, the proposed class must be sufficiently definite. As noted by Professor Wright, a class will be deemed sufficiently definite if it is administratively feasible to determine if a given individual is a member of the class:

"[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7 Wright and Miller, *Federal Practice and Procedure,* § 1760 at p. 582.

Whether a given person is a member of the class proposed by the movants can be determined in the same manner as this court determined whether the Gilleys and Miller were affected by the implementation of the collateral contact and six month rules.

The class proposed by the movants is too broad, however, in light of the rulings made by the court. The proposed class would include those who have been or will be affected by all of § 2313 of USDA FNS(FS) Instruction 732–1. Instead, the class should include only those who have been or will be affected by the collateral contact and six month rules set forth in § 2313. The court, exercising its discretion, will so limit the class.

Movants must satisfy all of the provisions of FRCP 23(a) and one of the subdivisions of FRCP 23(b) in order to obtain certification of their suit as a class action.

Rule 23(a) provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Whether the number of persons in a proposed class is so great that it would be impractical to join them in the suit cannot be decided by reference to some arbitrary number, but rather must depend on the circumstances of each case. 3B Moore's Federal Practice ¶ 23.05 at 23–277 to 23–278. In the instant case, the proposed class is national in character. The geographic distances between this forum and applicants who would become part of the proposed class is so great that joinder would be difficult. While the court has not been given by the parties a precise indication of the number of applicants who would become part of the class, the nature of the class indicates that the number would be substantial. The Food Stamp Program embraces thousands of persons, and although the certification pending verification procedure is but a part of the overall Program, the court is satisfied that the class proposed is so numerous that joinder of all members would be impracticable.

There are questions of law common to the class. All the members of the class share the common question of the propriety of the federal defendant's failure to publish the collateral contact and six month rules in proposed and final form.

The claims of the representative parties are typical of the claims of the class. Plaintiffs' and Intervenors' claims are all based on the failure of the federal defendant to publish the collateral contact and six month rules as required by law. Because the Gilleys are without standing to raise any objections to the failure to publish the collateral contact rule, the court will not deem them to be class representatives with respect to that claim. This is not fatal to the balance of the action because, as noted at 7 Wright and Miller, Federal Practice and Procedure, § 1761 at pp. 586–587:

" . . . if the action is brought by . . . several representative parties, it only is necessary that one of them be a qualified member of the class as long as the other prerequisites of Rule 23(a) are satisfied."

The court also finds that the representative parties will fairly and adequately protect the interests of the class. Counsel for all parties in this action have submitted lengthy and well-reasoned memoranda. Moreover, the movants have made every effort to prosecute this action, as evidenced by their prompt motion for class certification and summary judgment.

Having found that the movants have satisfied the elements of Rule 23(a), the court will make one brief observation before turning to the requirements of Rule 23(b). While movants have asked the court to certify a nationwide class, as has been done in other cases (i. e., *Anderson v. Butz, supra*), the particular instruction section at issue at this moment is one which only affects those states which have opted to participate in the certification pending verification procedure. According to exhibits offered by movants, New Jersey, New York, Illinois, Rhode Island, Connecticut, and North Carolina have opted to participate in the certification pending verification program.

Therefore, this court's order will only affect these states and any other state which has elected to participate in the certification pending verification program authorized by 7 CFR § 271.4(a)(2)(iii).

Movants seek to bring this action as a Rule 23(b)(2) class action. Rule 23(b)(2) provides:

". . . the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The case at bar fits squarely within this provision. The federal defendant opposing the class has failed to publish an instruction for reasons generally applicable to the class, thereby making appropriate final injunctive and corresponding declaratory relief.

IT IS THEREFORE ORDERED that Plaintiffs' and Intervenors' class certification motion is GRANTED to the extent stated herein.

IT IS FURTHER ORDERED that Plaintiffs' and Intervenors' motion for partial summary judgment against the federal defendant and the state defendants is GRANTED to the extent stated herein.

IT IS FURTHER ORDERED that the state defendants' motion for summary judgment against the federal defendant is DENIED.

IT IS FURTHER ORDERED that the federal defendant will submit to the court within thirty days from the date hereof a plan for compliance with this court's order.