JUSTICE PER.LIN
 

 delivered the opinion of the court:
 

 On August 28, 1980, defendant, the Attorney General of Illinois, adopted comprehensive rules regulating the operation of buyers clubs
 
 [1]
 
 within Illinois. (4 Ill. Reg., No. 37, at 567-96 (1980).) The Attorney General based his authority to issue these rules on section 4 of the Consumer Fraud and Deceptive Business Practices Act (the Act), which provides:
 

 “To accomplish the objectives and to carry out the duties prescribed by this Act, the Attorney General, in addition to other powers conferred upon him by this Act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, prescribe such forms and promulgate such rules and regulations as may be necessary, which rules and regulations shall have the force of law.” Ill. Rev. Stat. 1981, ch. 121½, par. 264.
 

 A violation of the Buyers Club Rules “constitutes an unfair method of competition and an unfair or deceptive act or practice within the meaning of Section 2 of the *** Act [Ill. Rev. Stat. 1981, ch. 121½, par. 262] subject to the penalties contained therein.” Rule 108, 4 Ill. Reg., No. 37, at 572-73 (1980).
 

 The Rules were made effective October 1, 1980 (4 Ill. Reg., No. 37, at 554 (1980).) On the same date, plaintiff, United Consumers Club, Inc., a corporation which derives its principal source of income from the sale of memberships in buyers clubs, filed an action in the circuit court seeking declaratory and injunctive relief against the Rules. Plaintiff claimed, inter alia, that the Attorney General has no power to issue binding substantive rules and regulations under section 4 of the Act, that the Rules unconstitutionally impair the obligation of contracts and that the Act unlawfully delegates legislative authority to the Attorney General. The parties thereafter filed cross motions for summary judgment on these issues.
 

 In a final judgment order entered on March 26, 1982, the circuit court found that the Attorney General has authority under section 4 of the Act to promulgate binding substantive rules and regulations, that the Rules do not on their face unconstitutionally impair the obligation of contracts and that the Act contains a lawful delegation of legislative authority. Consistent with these findings, the court denied plaintiff’s motion for summary judgment and granted defendant’s motion for summary judgment. The court reserved ruling on the other issues presented in plaintiff’s complaint, including the question as to whether the Attorney General exceeded his statutory authority in promulgating individual Buyers Club Rules. Plaintiff has appealed. Pursuant to an agreed order, the enforcement of the Rules has been stayed pending disposition of the appeal.
 

 I
 

 Plaintiff initially contends that section 4 of the Consumer Fraud and Deceptive Business Practices Act does not confer upon the Attorney General authority to promulgate binding substantive rules and regulations. In considering this contention, it is essential to recognize the fundamental distinction Professor Davis has articulated between legislative and interpretative rules: “A legislative rule is the product of an exercise of delegated legislative power to make law through rules. An interpretative rule is any rule an agency issues without exercising delegated legislative power to make law through rules.” (2 K. Davis, Administrative Law Treatise sec. 7:8, at 36 (2d ed. 1979).) In Joseph v. United States Civil Service Com. (D.C. Cir. 1977), 554 F. 2d 1140, the court elaborated upon this distinction:
 

 “Interpretative rules may be substantive in the sense of addressing a substantive rather than procedural issue of law and legislative rules may be procedural.
 
 [2]
 
 The relevant distinction between legislative and interpretative or any other nonlegislative rules is not the nature of the questions they address but the authority and intent with which they are issued and the resulting effect on the power of a court to depart from the decision embodied in the rule.” 554 F.2d 1140,1153 n.24.
 

 “Legislative rules have the full force of law and are binding on a court subject only to review under an arbitrary and capricious standard. Interpretative rules do not have the force of law and even though courts often defer to an agency’s interpretative rule they are always free to choose otherwise.” 554 F.2d 1140, 1154 n.26.
 

 Section 4 of the Consumer Fraud and Deceptive Business Practices Act provides in pertinent part that “[t]o accomplish the objectives and to carry out the duties prescribed by this Act, the Attorney General *** may *** promulgate such rules and regulations as may be necessary, which rules and regulations shall have the force of law." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 121½, par. 264.) In light of this explicit statutory language, it is clear that rules and regulations promulgated by the Attorney General under section 4 are legislative and thus are binding on the courts. See General Electric Co. v. Gilbert (1976), 429 U.S. 125, 141, 50 L. Ed. 2d 343, 357, 97 S. Ct. 401, 410-11, where the Supreme Court stated that administrative regulations which Congress has declared shall have the force of law are legally binding.
 

 Plaintiff, however, points out that the Attorney General’s authority to adopt rules and regulations having the force of law appears in a section of the Act which also confers authority to issue subpoenas, administer an oath or affirmation, conduct investigations and inquiries, hold hearings and prescribe forms. It is plaintiff’s position that the Attorney General’s rulemaking authority under section 4 is limited to the promulgation of procedural rules implementing his investigatory and subpoena powers. We cannot agree.
 

 Whether section 4 invests the Attorney General with substantive rulemaking authority presents an issue of first impression in Illinois. We note, however, that five States have statutory provisions virtually identical to section 4 of the Illinois Act. (Iowa Code Ann., sec. 714.16 (West 1979); N.J. Rev. Stat. sec. 56:8 — 4 (1964); N.D. Cent. Code sec. 51 — 15—05 (1982); S.C. Code Ann. sec. 39 — 5—80 (Law. Co-op. 1977); S.D. Comp. Laws Ann. sec. 37 — 24—14 (1977).) Our research discloses that in only one of these jurisdictions, New Jersey, has the State attorney general promulgated substantive rules and regulations. His authority to adopt such rules was sustained by the New Jersey Supreme Court in Fenwick v. Kay American Jeep, Inc. (1977), 72 N.J. 372, 371 A.2d 13.
 
 [3]
 

 In Fenwick, an advertising agency challenged the validity of an administrative regulation which makes it an unlawful motor vehicle advertising practice to fail to disclose the bona fide odometer reading in an advertisement for the sale of a used automobile. The practice is deemed unlawful without regard to the intent of the advertiser. In reviewing this regulation, the Supreme Court of New Jersey, noting that the Consumer Fraud Act was passed in response to widespread complaints about selling practices which victimized consumers, stated:
 

 “The purpose of the Act was to prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate. To accomplish the objectives of the Act, the Attorney General is empowered to promulgate such rules and regulations as might be necessary. N.J.S.A. 56:8 — 4.
 
 [4]
 

 The administrative regulations adopted pursuant to the Act spell out numerous selling or advertising practices in particular areas of consumer sales that are either required or prohibited. [Citation.] With regard to motor vehicle advertising practices, one of the proscribed practices is the failure in a price advertisement of a used motor vehicle to disclose the bona fide odometer reading thereof.” 72 N.J. 372, 376-77, 371 A.2d 13, 15.
 

 The court rejected the advertising agency’s argument that the failure to include the mileage in each sales advertisement was at most the omission of a material fact and would not be an unlawful practice unless knowledge and intent were shown:
 

 “However, this argument overlooks the power of the Attorney General to adopt rules to further the purpose of the act to prevent fraud and other deceptive practices. When a used car is advertised for sale "without indicating its mileage there is a substantial possibility that a prospective purchaser would be misled by assuming the vehicle has been driven an average number of miles for its model year whereas in fact the car may have been driven a far greater number of miles. The regulation here adopted by the Attorney General has the effect of preventing the possibility of such deception if strictly enforced without regard to the intent of the advertiser. It therefore is within the broad rule-making power conferred by the statute on the Attorney General.” 72 N.J., 372, 378, 371 A.2d 13,16.
 

 See also Levin v. Lewis (1981), 179 N.J. Super 193, 200, 431 A.2d 157, 161, where the New Jersey Superior Court, Appellate Division, held that “[t]he Consumer Fraud Act should be construed liberally in favor of protecting consumers as well as construed to confer upon the Attorney General the broadest kind of power to act in the interest of the consumer public.”
 

 We agree with the reasoning of the New Jersey Supreme Court and find that the same considerations which led that court to sustain the New Jersey Attorney General’s substantive rulemaking authority obtain here. In discussing the nature of the Consumer Fraud and Deceptive Business Practices Act, our supreme court has stated:
 

 “The Act is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them. Its stated purpose, set forth in its preamble, is to protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive business practices. The Act is clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils.” Scott v. Association For Childbirth At Home, International (1981), 88 Ill. 2d 279, 288, 430 N.E.2d 1012.
 

 The court noted further that “[sjection 4 authorizes the Attorney General to *** prescribe rules and regulations to accomplish the objectives and carry out the duties prescribed by the Act.” (88 Ill. 2d 279, 292 n.2.) We see no reason to impose a restrictive procedural gloss on the Attorney General’s authority to promulgate legislative rules and regulations when a properly promulgated substantive rule unquestionably effectuates the objectives of the statute. Independent Bankers Association of America v. Heimann (D.C. Cir. 1979), 613 F.2d 1164, 1169.
 

 We find additional persuasive support for this position in National Petroleum Refiners Association v. Federal Trade Com. (D.C. Cir. 1973), 482 F.2d 672. The issue in this landmark case was whether the Federal Trade Commission possesses substantive rulemaking authority.
 
 [5]
 

 Section 5 of the Federal Trade Commission Act directed the FTC to “prevent persons, partnerships, or corporations *** from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce.” (15 U.S.C. sec. 45(a)(6) (1972).) Section 6(g) of the Act empowered the FTC “to make rules and regulations for the purpose of carrying out the provisions of sections 41 to 46 and 47 to 58 of this title.” 15 U.S.C. sec. 46(g) (1972).
 

 In National Petroleum, the court considered an argument similar to the one plaintiff advances here that the “rule-making power [in section 6(g)] is limited to specifying the details of the Commission’s nonadjudicatory, investigative and informative functions spelled out in the other provisions of Section 6 and should not be read to encompass substantive rule-making in implementation of Section 5 adjudications.” (482 F.2d 672, 676-77.) The court rejected this argument “for the simple reason that Section 6(g) clearly states that the Commission ‘may’ make rules and regulations for the purpose of carrying out the provisions of Section 5 and it has been so applied.” (482 F.2d 672, 677.) Similarly, section 4 of the Illinois Act provides that the Attorney General “may *** promulgate such rules and regulations as may be necessary” to “accomplish the objectives and to carry out the duties prescribed by [the] Act.” (Ill. Rev. Stat. 1981, ch. 121½, par. 264.)
 
 [6]
 
 The powers specified in section 4 of the Act do not stand isolated from the Attorney General’s enforcement role laid out in section 7. (Ill. Rev. Stat. 1981, ch. 121½, par. 267.) Like the Federal Trade Commission Act, the Illinois Consumer Fraud and Deceptive Business Practices Act should be treated as an integrated whole. 482 F.2d 672, 677-78.
 

 The court of appeals in National Petroleum saw “no reason to import * * * a [procedural] restriction on the ‘rules and regulations’ permitted by Section 6(g).” (482 F.2d 672, 678.) To the contrary, the court stated:
 

 “[judicial precedents concerning rule-making by other agencies and the background and purpose of the Federal Trade Commission Act lead us liberally to construe the term ‘rules and regulations.’ The substantive rule here unquestionably implements the statutory plan. Section 5 adjudications — trial type proceedings — will still be necessary to obtain cease and desist orders against offenders, but Section 5 enforcement through adjudication will be expedited, simplified, and thus ‘carried out’ by use of this substantive rule. And the overt language of both Section 5 and Section 6, read together, supports its use in Section 5 proceedings.” 482 F.2d 672, 678.
 

 In order to accomplish the objectives and to carry out the duties prescribed by the Consumer Fraud and Deceptive Business Practices Act, section 4 of that Act authorizes the Attorney General to “promulgate such rules and regulations as may be necessary, which rules and regulations shall have the force of law.” (Ill. Rev. Stat. 1981, ch. 121½, par. 264.) The legislature has mandated that the Act “shall be liberally construed to effect the purposes thereof” (Ill. Rev. Stat. 1981, ch. 121½, par. 271a), and substantive rulemaking power “unquestionably implements the statutory plan” (National Petroleum, Refiners Association v. Federal Trade Com,. (D.C. Cir. 1973), 482 F.2d 672, 678). Moreover, the Attorney General’s statutory responsibility to enforce the provisions of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 267) will be “expedited, simplified and thus ‘carried out’ by use of [these] substantive rule[s].” 482 F.2d 672, 678.
 
 [7]
 

 We agree with the Attorney General that his right to request injunctive and other relief under section 7 of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 267) does not preclude substantive rulemaking as a means of accomplishing the objectives of the statute. The Attorney General must still seek relief in the circuit court to secure an injunction against any person violating a rule or regulation. Substantive rulemaking does not bypass the injunction proceedings; it merely supplements them.
 

 Finally, it must be observed that the Attorney General “is hardly free to write [his] own law of consumer protection *** since the statutory standard which the rules may define with greater particularity is a legal standard” (National Petroleum, Refiners Association v. Federal Trade Com,. (D.C. Cir. 1973), 482 F.2d 672, 693) and judicial review is available to ensure that any rules promulgated by the Attorney General come within that standard.
 

 In determining whether the legislature intended to limit the Attorney General’s rulemaking authority to matters of procedure, we note that section 2 of the original Consumer Fraud Act exempted “any advertisement which is subject to and complies with the rules and regulations of *** the Federal Trade Commission.” (Emphasis added.) (Ill. Rev. Stat. 1961, ch. 121½, par. 262.)
 
 [8]
 
 The “rules and regulations” issued by the Federal Trade Commission in 1961 were termed trade practices conference rules and were designed to inform businessmen what factors would guide Commission decisions. While these rules were not binding on the courts (see Federal Trade Commission v. Mary Carter Paint Co. (1965), 382 U.S. 46, 47-48, 15 L. Ed. 2d 128-29, 86 S. Ct. 219-21), it is clear that the content of the rules was substantive, not procedural.
 

 The term “rules and regulations” appears in both sections 2 and 4 of the Consumer Fraud Act. Words which, when used in one section of a statute, have a clearly defined meaning, ordinarily will be given the same meaning in another section of the same statute. (Airdo v. Village of Westchester (1981), 95 Ill. App. 3d 568, 569, 420 N.E.2d 472.) In section 2, the term “rules and regulations” refers to substantive, not procedural, rules and regulations. Absent a contrary indication, the same term should be given the same meaning in section 4.
 
 [9]
 
 Here, there is no such indication. In contrast to the statutes in other States (see, e.g., Ariz. Rev. Stat. Ann. sec. 44 — 1526(A)(4) (1967) and Kan. Stat. Ann. sec. 50 — 630 (1976) and the Official Kansas Comment thereto), section 4 does not restrict the Attorney General’s rulemaking authority to issuance of procedural rules and regulations. Nor, in our opinion, should section 4 be so narrowly construed.
 

 The plain language of section 4 confers upon the Attorney General legislative rulemaking authority. Plaintiff has offered no valid reason why this authority should be limited to procedural rulemaking. Plaintiff has not cited a single instance in which an administrative agency’s general power to promulgate legislative rules and regulations has been restricted to matters of procedure. In our judgment, plaintiff’s interpretation of section 4 is arbitrary and, if accepted, would frustrate the clear legislative mandate that the Act be used to the utmost degree in eradicating all forms of deceptive and unfair business practices. (Duhl v. Nash Realty Inc. (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267.) Accordingly, we agree with the circuit court that section 4 of the Illinois Consumer Fraud and Deceptive Business Practices Act confers upon the Attorney General authority to promulgate binding substantive rules and regulations.
 

 II
 

 Plaintiff next contends that the Buyers Club Rules as promulgated by the Attorney General unconstitutionally impair the obligation of contracts.
 

 Rule 102 provides that “[tjhese rules shall be effective and apply to the operation of all existing and future buyers club businesses situated, or with buyers residing, in any county within the State of Illinois.” (4 Ill. Reg., No. 37, at 570 (1980).) Plaintiff submits that since the Rules do not exempt membership contracts entered into before October 1, 1980 (the effective date of the Rules), all such preexisting contracts are subject to the Rules. We cannot agree.
 

 Rule 102 states that the rules apply to the operation of “all existing and future buyers club businesses,” not to all existing and future buyers club contracts. (Emphasis added.) An examination of the Buyers Club Rules indicates that it would be impossible to apply many of the Rules to buyers club membership contracts entered into before October 1, 1980. For example, Rule 201 requires certain written disclosures prior to the execution of an application or contract for discount buying services; Rule 202 prohibits certain sales representations and practices; Rules 203 and 206 dictate specific contract terms; and Rule 204 limits the duration of a contract for discount buying services. 4 Ill. Reg., No. 37, at 573-83 (1980).
 

 We do not believe the Buyers Club Rules specifically had to exempt existing contracts for discount buying services when it is readily apparent that many of the Rules logically could not be given retroactive effect. It is well established that administrative regulations should be construed in a manner compatible with constitutional limitations. (Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon (1979), 75 Ill. 2d 53, 59, 387 N.E.2d 320.) Consistent with this rule of construction, we interpret the Buyers Club Rules not to apply to membership contracts entered into before October 1, 1980, the date on which the Rules became effective.
 

 Ill
 

 Plaintiff’s third and final contention is that the Consumer Fraud and Deceptive Business Practices Act constitutes an unlawful delegation of legislative authority to the Attorney General. We disagree.
 

 To delegate its authority, the legislature must sufficiently identify the persons and activities potentially subject to regulation, the harm sought to be prevented and the general means intended to be available to prevent the identified harm. (Stofer v. Motor Vehicle Casualty Co. (1977), 68 Ill. 2d 361, 372, 369 N.E.2d 875; People v. Gurrell (1983), 98 Ill. 2d 194, 210-11.) In determining whether an Act satisfies these requirements, the Act must be considered in its entirety. Stofer v. Motor Vehicle Casualty Co. (1977), 68 Ill. 2d 361, 369 N.E.2d 875.
 

 The persons and activities potentially subject to regulation under the Consumer Fraud and Deceptive Business Practices Act are “persons” engaged in “trade or commerce.” (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) These terms are adequately defined in the Act. Ill. Rev. Stat. 1981, ch. 121½, par. 261(c) through (f).
 

 The harm sought to be prevented by the Act are “[ujnfair methods of competition and unfair or deceptive acts or practices.” (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) The constitutionality of these terms was sustained in Scott v. Association For Childbirth At Home, International (1981), 88 Ill. 2d 279, 285-92, 430 N.E.2d 1012. Apropos of the issue before us, the court, in Scott, stated:
 

 “[Ojur conclusion that section 2 is sufficiently definite to serve as a guide to those who must comply with it disposes of the contention that the Attorney General is left without a guide in enforcing the Act. Just as section 2 defines what conduct is prohibited, it defines what conduct is properly the subject of the Attorney General’s investigative and enforcement activities.” 88 Ill. 2d 279, 291-92.
 

 Finally, the means available to the Attorney General to prevent the identified harm include investigatory adjudicatory and regulatory powers. (Ill. Rev. Stat. 1981, ch. 121½, pars. 263, 264, 266, 266.1, 267.) In Scott, the court observed:
 

 “[T]he exercise of the Attorney General’s investigative powers under the Act is subject to judicial supervision. The Attorney General has no power of his own to compel either the filing of reports or the production of documents. If voluntary compliance is refused, he must resort to a court for an order enforcing compliance. (Ill. Rev. Stat. 1977, ch. 121½, pars. 266, 267.)” 88 Ill. 2d 279, 299-300.
 

 These limitations act as safeguards “against abuse or excessive zeal” of the Attorney General. 88 Ill. 2d 279, 300.
 

 Under the Act, the Attorney General has no power of his own to impose sanctions or to compel persons to cease using unfair or deceptive acts or practices. All relief must be obtained through the courts. (Ill. Rev. Stat. 1981, ch. 121½, par. 267.) We therefore conclude that the Consumer Fraud and Deceptive Business Practices Act contains a valid delegation of legislative authority to the Attorney General.
 

 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
 

 Affirmed.
 

 STAMOS and HARTMAN, JJ., concur.
 

 [1]
 

 The Buyers Club Rules (the Rules) defines a “Buyers Club” as “any person or persons, corporation, partnership, unincorporated association, or other organization operating for profit within the State of Illinois which for a consideration provides or purports to provide its buyers with the ability to purchase any of the following merchandise at discount prices: 1. furniture 2. motor vehicles 3. carpeting 4. food items 5. major appliances.” (Rule 101, 4 Ill. Reg., No. 37, at 569 (1980).) The Rules also apply to “[a]ny organization affiliated with a buyers club for the purpose of placing orders with, making payment to, or receiving merchandise from suppliers or manufacturers ***.” (Rule 104, 4 Ill. Reg., No. 37, at 571 (1980).) There are exceptions from application of the Rules which are not involved in this appeal. See Rule 105, 4 Ill. Reg., No. 37, at 571-72 (1980).
 

 The Rules prohibit certain sales representations and practices, dictate specific contract terms, establish operating procedures, impose State filing and bonding requirements and provide consumer remedies. A detailed explanation of the Rules as originally proposed may be found in 3 Ill. Reg., No. 50, at 39-51.
 

 [2]
 

 GeneralIy, “[procedural rules are those that relate to the method of operation of the agency, while substantive rules are those which establish standards of conduct or entitlement.” Aiken v. Obledo (E.D. Cal. 1977), 442 F. Supp. 628, 649.
 

 [3]
 

 Commentators have expressed the opinion that the North Dakota and South Carolina statutes also authorize the State attorney general to promulgate binding substantive rules and regulations. See Myhre, The Attorney General For The State And The Attorney For The People: The Powers And Duties Of The Attorney General of North Dakota, 52 N.D.L. Rev. 349, 374 (1975); Note, Consumer Protection in North Dakota, 49 N.D.L. Rev. 643, 645 (1973); Day, The South Carolina Unfair Trade Practices Act: Sleeping Giant Or Illusive Panaceal 33 S.C.L. Rev. 479, 516 — 18 (1982).
 

 [4]
 

 Section 56:8 — 4 provides: “To accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred upon him by this act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, promulgate such rules and regulations, and prescribe such forms as may be necessary, which shall have the force of law.” The New Jersey Consumer Fraud Act was enacted in 1960. 1960 N.J. Laws ch. 39, at 137.
 

 [5]
 

 In National Petroleum, the plaintiffs challenged the FTC’s authority to issue a “Trade Regulation Rule” declaring that failure to post octane rating numbers on gasoline pumps at service stations was an unfair method of competition and an unfair or deceptive act or practice. 482 F.2d 672, 674.
 

 [6]
 

 “Where the empowering provision of a statute states simply that the agency may ‘make *** such rules and regulations as may be necessary to carry out the provisions of this Act,’ we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is ‘reasonably related to the purposes of the enabling legislation.’ Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280-281 (1969).” Mourning v. Family Publications Service, Inc. (1973), 411 U.S. 356, 369, 36 L. Ed. 2d 318. 329-30, 93 S. Ct. 1652. 1660-61.
 

 [7]
 

 The advantages of a mixed system of rulemaking and adjudication over total reliance on case-by-case adjudication are indisputable. 482 F.2d 672, 681, 683, 690-91.
 

 [8]
 

 The Consumer Fraud Act of 1961 (Ill. Rev. Stat. 1961, ch. 121 1/2, par. 261 et seq.), as amended, was renamed and substantially revised by the Consumer Fraud and Deceptive Business Practices Act of 1973 (Ill. Rev. Stat. 1973, ch. 121 1/2, par. 261 et seq.). Section 2 now provides in relevant part that “[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. [15 U.S.C. sec. 45(a).]” Ill. Rev. Stat. 1981, ch. 121 1/2, par. 262.
 

 [9]
 

 Unlike the FTC’s trade practices conference rules, however, rules and regulations promulgated by the Attorney General under the Illinois Act are legislative, not interpretative.