358 S.E.2d 432

**W. VA. CHIROPRACTIC SOCIETY, INC., et al.**

v.

**Mary Martha MERRITT, Commissioner, etc.**

No. 17266.

Supreme Court of Appeals of West Virginia.

May 29, 1987.

Gerald R. Stowers and Thomas E. Scarr, Bowles, McDavid, Graff & Love, Charleston, for appellants.

Charles G. Brown, Atty. Gen., and Robert D. Pollitt, Asst. Atty. Gen., for appellee.

MILLER, Justice:

The Workers' Compensation Commissioner (Commissioner) appeals an order of the Circuit Court of Kanawha County holding that she failed to comply with the Administrative Procedures Act, W.Va.Code, 29A-1-1, *et seq.* (APA), in promulgating what is denominated a "POLICY STATEMENT" and "CHIROPRACTIC FEE AND UTILIZATION SCHEDULE" (Schedule). This Schedule, among other things, limits the maximum charges payable for various chiropractic treatments.[1] The Commissioner contends the Schedule does not constitute a "rule" subject to the rule-making requirements of the APA. An additional reason advanced is that the legislature by enacting W.Va.Code, 23-4-3,[2] which authorizes the issuance of the Schedule, meant to specifically exempt this particular grant of rule-making authority from the procedural requirements of the APA. We disagree, and we affirm the circuit court.

There is no dispute that the Commissioner did not follow the rule-making requirements of Article 3 of the APA, such as filing a notice of the proposed action, including the text of the proposed rule and a fiscal note in the State Register.[3] There is likewise no dispute that a State agency[4] covered by the APA must comply with its requirements when acting in a rule-making capacity, and that rules not promulgated in accordance with its requirements are invalid and unenforceable.[5]

The Commissioner's position is that establishing a "schedule" pursuant to W.Va. Code, 23-4-3, is not tantamount to implementing a "rule" within the meaning of the APA, and thus she had no duty to adhere

1. The four-page Schedule establishes maximum allowable charges for several types of diagnostic studies, including various types of x-ray examinations. It also establishes a maximum number of treatments that will be approved for payment during specified weekly intervals within the first twenty-four weeks of treatment. After twenty-four weeks, additional treatments will not be considered for authorization until after a review of the medical findings made by an independent examiner selected by the Commissioner. The Schedule also limits the type of treatment for which payment will be made or ordered.

2. The Commissioner's authority to establish a schedule of maximum payments for medical treatments to injured claimants is granted by W.Va.Code, 23-4-3 (1976), which as material here provides:

"The commissioner shall establish and alter from time to time as he may determine to be appropriate a schedule of the maximum reasonable amounts to be paid to physicians, surgeons, hospitals or other persons, firms or corporations for the rendering of treatment to injured employees under this chapter."

A further sentence was added to the statute by virtue of Senate Bill No. 531, which was passed on March 8, 1986, and became effective ninety days thereafter on June 9, 1986, some three weeks after the effective date of the Schedule invalidated by the circuit court. This sentence reads as follows: "The commissioner also, on the first day of each regular session, and also from time to time, as the commissioner may consider appropriate, shall submit the schedule, with any changes thereto, to the Legislature."

3. W.Va.Code, 29A-3-4, begins the procedural steps with a filing "in the state register [of] a notice of its action, including the text of the rule as proposed." W.Va.Code, 29A-3-5, contains detailed steps as to public comment and hearings. W.Va.Code, 29A-3-6, relates to the filing of findings in the state register. Additional requirements for what are termed "legislative" rules are found in W.Va.Code, 29A-3-9 through -14.

4. The APA defines "agency" to include "any state board, commission, department, office or officer authorized by law to make rules or adjudicate contested cases, except those in the legislative or judicial branches." W.Va.Code, 29A-1-2(a). The Commissioner is not an exempt agency under W.Va.Code, 29A-1-3.

5. W.Va.Code, 29A-3-1 (1982), provides, in part: "[E]very rule and regulation ... shall be promulgated by an agency only in accordance with this article and shall be and remain effective only to the extent that it has been or is promulgated in accordance with this article."

to its procedural requisites. The Commissioner contends that the legislature intended to afford her substantial discretion and flexibility in establishing a schedule of maximum reasonable amounts to be paid to medical providers, as reflected by the language in W.Va.Code, 23–4–3, which empowers the Commissioner to "alter [the schedule] from time to time as he [or she] may determine to be appropriate."

In addition, the Commissioner maintains that the 1986 amendment to W.Va.Code, 23–4–3, which is contained in note 2, *supra,* bolsters her position that the legislature never intended to subject her power to establish a maximum medical fee schedule to the substantial time constraints imposed by the APA. The 1986 amendment requires the Commissioner to submit the schedule, with any changes thereto, to the legislature on the first day of the legislative session and on such additional occasions as the Commissioner may deem it appropriate.

The Commissioner relies on our per curiam decision in *Conner v. Civil Service Comm'n,* 175 W.Va. 127, 331 S.E.2d 858 (1985). There, an attorney who had successfully represented a discharged civil service employee challenged the adequacy of his attorney's fee award in the Circuit Court of Kanawha County. The Civil Service Commission had awarded some $6,200 in attorney's fees based upon a fee schedule it had previously established. The circuit court awarded additional attorney's fees by increasing the hourly rate above that provided by the fee schedule. We decided that the circuit court had erred in departing from the attorney's fee schedule and by way of dictum stated that "the fee schedule as set by the CSC is not such [a] rule as is contemplated by the Administrative Procedures Act." 175 W.Va. at 129, 331 S.E.2d at 860.

*Conner* did not make any extensive discussion of this point and cited only *Haines v. Workmen's Compensation Comm'r,* 151 W.Va. 152, 150 S.E.2d 883 (1966). The decisive point in *Haines* was that an unwritten policy being applied by the Workers' Compensation Fund was invalid because it conflicted with the plain meaning of a statute which specified the percentage of permanent disability awardable for certain enumerated injuries. In reversing the Appeal Board on this basis, the Court stated that "any policy adopted and applied by the commissioner must conform to law." 151 W.Va. at 157, 150 S.E.2d at 886. *See Ney v. State Workmen's Compensation Comm'r,* 171 W.Va. 13, 297 S.E.2d 212 (1982).

In the present case, we deal with more than a fee schedule. The Schedule regulates the number of visits and contains a medical review procedure, *see* note 1, *supra.* Courts are in general agreement that the label attached to an administrative action is not determinative as to whether the action taken constitutes an administrative rule falling within the rule-making requirements of the APA. *E.g, Columbia Broadcasting System v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed.2d 1563 (1942); *Associated Dry Goods Corp. v. E.E.O.C.,* 720 F.2d 804 (4th Cir.1983); *Cheshire Convalescent Center v. Comm'n on Hospitals,* 34 Conn.Supp. 225, 386 A.2d 264 (1977); *Board of Education v. Cooperman,* 209 N.J.Super. 174, 507 A.2d 253 (1986); *United Consumers Club, Inc. v. Attorney Gen.,* 75 Ill.Dec. 35, 119 Ill.App.3d 701, 456 N.E.2d 856 (1983).

The legislature amended the APA in 1982, following our decision in *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981), where we invalidated the provisions of the APA which permitted a legislative committee to veto rules and regulations otherwise validly promulgated by administrative agencies. The 1982 amendments, as noted in A. Neely, Administrative Law in West Virginia (1982), retained the existing definition of a "rule" in W.Va. Code, 29A–1–1, and added "detailed definitions of three basic varieties of rules, in addition to the general definition." A. Neely, *supra* at 27 (1983 Supp.). These three types of rules are: (1) legislative rules, (2) interpretive rules or statements of policy, and (3) procedural rules.

To determine whether the Schedule in this case constitutes a rule and what type

of rule, we look to the definitions set out in W.Va.Code, 29A–1–2. It would appear that the Commissioner's Schedule is one of "general application and future effect ... affecting private rights, privileges or interests," which is one of the definitions of a rule found in W.Va.Code, 29A–1–2(i) (1982).[6] It involves a public policy issue having obvious economic significance to chiropractors, to the Workers' Compensation Fund, and to all employers, regular subscribers and self-insurers alike, covered by the workers' compensation law. It would likewise undoubtedly affect the extent of chiropractic treatment available to injured workers in this State covered by the compensation law. Furthermore, the Schedule "makes specific" the meaning of the phrase "maximum reasonable amounts to be paid" contained in W.Va.Code, 23–4–3.[7]

It seems apparent that upon authorization of the legislature, the Schedule would have the "force of law" and would be determinative of an issue "affecting private rights" as these terms are used in W.Va. Code, 29A–1–2(d).[8] The Supreme Court of Rhode Island in *Lerner v. Gill*, 463 A.2d 1352, 1358 (R.I.1983), recently stated:

"To determine whether a rule is to be classified as legislative or interpretive, one must consider the power assigned to the administrative agency. If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are legislative rules having the force of law. *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977)."

Furthermore, the Schedule does not fall within any statutory exception to the definitions of a "rule" or "legislative rule," such as an administrative action relating solely to the internal management of an agency.[9] *See, e.g., Rossie v. State Dept. of*

---

**6.** A "rule" for purposes of Chapter 29A is defined in W.Va.Code, 29A–1–2(i) (1982), as follows:

"'Rule' includes every regulation, standard or statement of policy or interpretation of general application and future effect, including the amendment or repeal thereof, affecting private rights, privileges or interests, or the procedures available to the public, adopted by an agency to implement, extend, apply, interpret or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include regulations relating solely to the internal management of the agency, nor regulations of which notice is customarily given to the public by markers or signs, nor mere instructions. Every rule shall be classified as 'legislative rule,' 'interpretive rule' or 'procedural rule,' all as defined in this section, and shall be effective only as provided in this chapter."

**7.** For the relevant text of W.Va.Code, 23–4–3, *see* note 2, *supra.*

**8.** W.Va.Code, 29A–1–2(d), defines a "legislative rule." The parties do not delineate whether the Commissioner's Schedule would qualify as a legislative rule. This definition embraces the definition of a "rule" under subsection (i), *see* note 6, *supra,* and contains additional language. Because there was no compliance with the APA for even the promulgation of a "rule," we need not determine if the Schedule meets the definition of a legislative rule, which is:

"'Legislative rule' means every rule, as defined in subsection (i) of this section, proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule. Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect until promulgated by specific authorization of the legislature."

**9.** W.Va.Code, 29A–1–2(i) (1982), excludes from the definition of a "rule," administrative action relating to the internal management of the agency or notices "customarily given to the public by markers or signs, ... [or] mere instructions." *See* note 6, *supra,* for text of this subsection. In the definition of a "legislative rule" found in W.Va.Code, 29A–1–2(d) (1982), the following exceptions are listed:

"Except where otherwise specifically provided in this code, legislative rule does not include (A) findings or determinations of fact made or reported by an agency, including any such findings and determinations as are required to be made by any agency as a condition precedent to proposal of a rule to the legislature; (B) declaratory rulings issued by an

*Revenue,* 133 Wis.2d 341, 395 N.W.2d 801 (Wis.App.1986) (administrative directive prohibiting smoking in areas controlled by the agency).

Courts from other jurisdictions which have considered cases with analogous facts under administrative procedures acts similar to ours have found that such schedules must be promulgated under their acts. In *Division of Workers' Compensation Dept. of Labor & Employment Sec. v. McKee,* 413 So.2d 805 (Fla.App.1982), a proposed agency rule relating to physical therapists' fees was declared invalid on a threshold issue because no economic impact statement had been filed as required by the state's administrative procedures act.

In another workers' compensation case, *K–Mart Corp. v. State Industrial Ins. System,* 101 Nev. 12, 693 P.2d 562 (1985), the agency had followed a mathematical formula for computing increased assessments under a statute which had increased death and disability benefits payable to claimants. In determining the amount of increased assessments against self-insurers, the agency required that all assessments be paid in a lump sum and also required that any experience dividend owed by the agency to a self-insurer would be offset against dividend refunds permitted under a preexisting regulation. Although neither the lump sum payment nor the offset was required by statute, the agency did not follow the APA.

The court concluded that the agency's actions on these two matters constituted a statement of general application which effectuated law or policy and was thus subject to APA procedures. In invalidating these two requirements, the court made this broad statement at 101 Nev. at 17, 693 P.2d at 656:

> agency pursuant to the provisions of section one [§ 29A–4–1], article four of this chapter; (C) orders, as defined in subdivision (e) of this section; or (D) executive orders or proclamations by the governor issued solely in the exercise of executive power, including executive orders issued in the event of a public disaster or emergency."

None of these exceptions would seem to encompass the Commissioner's Schedule.

"An agency makes a rule when it does nothing more than state its official position on how it interprets a requirement already provided in the statute.... Here, the ... [agency's] rulings on the payment and offset were not necessarily required by the statute. The adoption of a similar rule pursuant to the A.P.A. belies the ... contention that rulemaking was not necessary in this instance."

Similarly, in *Aguiar v. Hawaii Housing Authority,* 55 Hawaii 478, 522 P.2d 1255 (1974), the court held that regulations, setting maximum income limits for continued occupancy in public housing and establishing a schedule of rents that tenants had to pay, were "rules" within the meaning of the State's APA. The court reached this conclusion because the regulations had a direct effect on the private rights of tenants living in the public housing and members of the public who were interested in becoming tenants. *See also Public Service Electric & Gas Co. v. New Jersey Dept. of Environmental Protection,* 101 N.J. 95, 501 A.2d 125 (1985); *Barry & Barry, Inc. v. State Dept. of Motor Vehicles,* 81 Wash.2d 155, 500 P.2d 540 (1972).[10]

One of the basic purposes of the APA is to provide an opportunity for public participation in the rule-making process, as indicated by this passage from W.Va.Code, 29A–1–1 (1982):

> "The Legislature finds and declares that administrative law and the administrative practice and procedure of the various executive and administrative officers, offices and agencies comprises a body of law and policy which is voluminous, often formulated without adequate public participation and collected and preserved for public knowledge and use in

---

**10.** In *West Virginia Manufacturers Ass'n v. State of W.Va.,* 714 F.2d 308 (4th Cir.1983), which involved among other matters the validity of the Commissioner of Labor's list of toxic chemicals authorized to be published under W.Va.Code, 21–3–18 (1981), the Fourth Circuit found the Commissioner had failed to follow the APA procedures. The Commissioner did not appear to argue that the published list was not subject to the APA.

an unacceptable and essentially inaccessible fashion." [11]

It also appears that if a federal agency had engaged in the administrative action undertaken here, it would have been required to comply with the Federal Administrative Procedures Act, 5 U.S.C. § 551, *et seq.*, which defines the term "rule" to include a policy establishing future rates, wages, prices, or costs.[12] *See, e.g., Phillips Petroleum Co. v. Federal Power Comm'n*, 475 F.2d 842 (10th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974) (agency's prescription of future gas rates); *Alaniz v. Office of Personnel Management*, 728 F.2d 1460 (Fed. Cir.1984) (agency's change in methodology for computing cost of living adjustments for federal employees); *State ex rel. Patrick v. Block*, 558 F.Supp. 1004 (D.S.C.1983) (Secretary of Agriculture's imposition of specific monetary deduction from milk sales to offset a portion of milk support program costs).

■ We, therefore, conclude that a schedule established by the Workers' Compensation Commissioner under W.Va.Code, 23–4–3, which fixes maximum reasonable amounts payable to health care providers and determines the type and amount of medical services reasonably required, is a rule subject to the rule-making requirements of the APA.

## II.

The other basis urged by the Commissioner to overturn the lower court's ruling is that the statute, W.Va.Code, 23–4–3, should be construed to carry a specific exemption from the ambit of the APA. There is language in W.Va.Code, 29A–3–2(b), which recognizes the right of the legislature to "expressly exempt" matters from the APA.[13] This is in addition to the general exemption found in W.Va.Code, 29A–1–3, which the parties agree is not applicable.

■ The problem with the Commissioner's argument is that W.Va.Code, 23–4–3, as it existed at the time the Commissioner promulgated the Schedule, merely authorized the establishment of "a schedule of the maximum reasonable amounts to be paid to physicians, surgeons, [and] hospitals." [14] There was no language in this section or any other related section which stated that this Schedule was exempt from the provisions of the APA.

As the appellees point out, this general authorization is in stark contrast to the specific exemption from the APA extended by the legislature to the Commissioner un-

11. The overall purpose of the APA is also set forth in W.Va.Code, 29A–1–1 (1982), which provides in part:

"Accordingly the Legislature has and by this chapter intends to fix by law uniform and settled administrative practices and procedures, subject only to enumerated exceptions, for the exercise of executive rule-making authority and for the exercise by executive and administrative officers, offices and agencies of lawfully delegated legislative power, with appropriate legislative review of that exercise of such a delegated legislative authority and with established procedures for legislative oversight of the exercise of executive rule-making authority."

12. As pertinent here, 5 U.S.C. § 551(4) states: "[A] 'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the ... practice requirements of an agency and includes the approval or prescription for the future of rates, wages, ... prices,

... appliances, services or allowances therefor or of valuations, costs ... or practices bearing on any of the foregoing."

13. W.Va.Code, 29A–3–2(b) (1982), provides:

"No executive or administrative agency shall be deemed to have power and authority to promulgate a legislative rule without compliance with this article unless: (1) the provision of this code, heretofore or hereafter enacted, granting such power and authority, *expressly exempts* its exercise from legislative rule-making review prior to promulgation or (2) the grant of such power and authority is exempted from the application of this chapter by the express provisions of this chapter. To the extent any such grant of power and authority, not so exempt, shall be deemed to exceed the limits and provisions of this article, such power and authority to promulgate legislative rules is hereby revoked." (Emphasis added).

14. For the relevant text of W.Va.Code, 23–4–3 (1976), *see* note 2, *supra.*

der W.Va.Code, 23–4C–3, which involved the employers' excess liability workers' compensation fund.[15] Furthermore, A. Neely, *supra* at 25, makes this comment with regard to a claim that an agency has an implied exemption from the APA: "It seems that the Legislature desires that any exemption from the APA be explicit—'express and specific.' The provision [W.Va. Code, 29A–1–3(d)] should discourage exemptions by implication." *See also People v. Cull,* 10 N.Y.2d 123, 218 N.Y.S.2d 38, 176 N.E.2d 495 (1961).

We do not believe that the general authorization contained in W.Va.Code, 23–4–3, to promulgate a schedule of reasonable medical fees, can be construed as an express exemption from the requirements of the APA. To reach this result would imply that every administrative agency which is given the power to publish a schedule or rule on some specific subject is thereby exempt from the requirements of the APA.[16]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.

---

15. The pertinent language of W.Va.Code, 23–4C–3 (1983), is as follows:

   "In order to expeditiously establish such criteria and procedures, the commissioner is hereby given authority to promulgate such emergency rule or rules as may be necessary in accordance with the provisions of section fifteen [§ 29A–3–15], article three, chapter twenty-nine-A of this Code. The provisions of said section fifteen [§ 29A–3–15], article three, chapter twenty-nine-A notwithstanding, such emergency rule, whether procedural, interpretive or legislative, shall be effective upon the filing thereof in the state register and shall have an effective period of not to exceed eighteen months, unless any such rule or rules be altered or amended or such period of time shortened or lengthened by subsequent act of the legislature."

   The Commissioner makes no argument that the Schedule was promulgated as an emergency legislative rule pursuant to W.Va.Code, 29A–3–15.

16. There are any number of administrative agency statutes which contain authorization permitting the agency to adopt regulations on some specific subject. *E.g.,* W.Va.Code, 20–3–2 (Director of Natural Resources authorized to establish rules prohibiting hunting and fishing and to open season for taking wild birds and animals); W.Va.Code, 21–3–18 (Commissioner of Labor authorized to establish list of toxic chemicals).